## IN RE WELLCOME.

[No. 1,401.]

[Submitted July 28, 1899.   Decided August 1, 1899.]

```
 23  213
s23  259
s23  451
s23  468
 23  213
 26  246
 26  251
 26  504
 23  213
 33  445
```

*Attorney—Disbarment—Materiality of Evidence as to Failure of Criminal Prosecution — Bribery of Legislator — Sufficiency of Attempt at Criminal Prosecution— Verification of Accusation.*

1.  In disbarment proceedings grounded on an alleged bribery, an affidavit stating the existence of prejudice in favor of the accused in the county where criminal proceedings were attempted against him is immaterial, when it does not state that the failure of the criminal proceedings was due to this prejudice.
2.  Where evidence tends to show that an attorney has been guilty of bribing a legislator, it is sufficient to justify disbarment proceedings, although the act was done in his private, not in his official, capacity.
  *Obiter:* A lawyer who is guilty of willful bribery of members of the legislature is unworthy of the honors and responsibilities accompanying the office of an attorney and counselor at law.
3.  In disbarment proceedings based on alleged bribery of a legislator, it appeared that a grand jury had been called to investigate the bribery by the accused; that they had examined witnesses, and failed to find an indictment; that thereupon the attorney general stated to the court that there were grounds for indictment, and asked for another grand jury, which was refused.  No further criminal proceedings were instituted.  *Held,* that this attempt at criminal prosecution was sufficient to justify the investigation of the charges by the Supreme Court as grounds for disbarment.
4.  It is not necessary that, as a condition precedent to the exercise of the jurisdiction of the Supreme Court in a disbarment proceeding, repeated efforts be made to secure an indictment for crime, or that unusual and extraordinary procedure be invoked under the Criminal Code; it is sufficient to justify the institution of disbarment proceedings in the Supreme Court, if the ordinary and usual forms of the criminal practice and procedure have been pursued.
5.  Under Code of Civil Procedure, Section 420, providing that an accusation must be verified by an oath that the charges therein are true, an accusation in disbarment proceedings wherein some of the charges are verified only on information and belief, and others are positively sworn to, is partially valid, and will stand against an objection aimed at the entire accusation.

IN THE matter of the disbarment of John B. Wellcome. Accused objects to the sufficiency of the accusation. Over- ruled.

*Mr. Jesse B. Roote, Messrs. Carpenter & Carpenter*, and *Mr. William Wallace, Jr.*, for accused.

*Mr. C. B. Nolan, Attorney General, amicus curiæ.*

**PER CURIAM.**—After our decision holding that this Court had jurisdiction to hear and determine the charges made against the accused herein, but that we would decline to inquire into the truth of the charges unless the accusation stated facts warranting the exercise of our jurisdiction, and which were not stated in the accusation considered on the for- mer hearing (*ante* p. 140, 58 Pac. 45), the attorney general filed affidavits stating the grounds upon which he asks the interposition of this Court. The affidavit of the attorney general is as follows:

"Affiant shows that during the session of the last legislative assembly, and bearing upon the corrupt use of money to influence the action of the members of said legislative assem- bly in voting for a United States senator, testimony was given before a legislative committee appointed for the purpose of hearing testimony regarding rumors as to the corrupt use of money, and that on the 10th day of January, 1899, a report was made by said committee, at a joint session of the legisla- tive assembly, in which report was incorporated the testimony of Fred. Whiteside, W. A. Clark, Henry L. Myers, members of said legislative assembly, and A. J. Campbell; that upon the presentation of said report, a resolution was duly moved, seconded, and adopted by said joint assembly, which said resolution is as follows:

" 'Resolved, By the house of representatives in joint assembly with the senate, that the evidence submitted to the joint assem- bly by the joint committee of the senate and house is sufficient to convict the persons therein named of the crime of bribery in any district court of this state, and therefore we request

that the judge of the district court of the First judicial district in and for the county of Lewis and Clarke call a session of the grand jury in said district to take up and examine into the matters stated in said report, as they would in any other case of alleged crime against the peace and dignity of the state.'

"That on the 12th day of January, 1899, the Honorable Sidney H. McIntire, judge of the district court of the First judicial district, deeming occasion therefor, issued a call for a grand jury to investigate the charges of bribery reported in connection with the election of a United States senator, and that on the 14th day of January, 1899, a grand jury was regularly impaneled, and thereupon entered upon the performance of its duty; that from the said 14th day of January, 1899, with interruptions through adjournment, the said grand jury continued in session until the 26th day of January, 1899; that several witnesses were examined before said grand jury respecting the alleged use of money in the senatorial contest then pending.

"Your affiant says that he was present at all the sessions of said grand jury when witnesses were examined, and that there was also present at all of said sessions Odell W. McConnell, the duly elected, qualified, and acting county attorney of Lewis and Clarke county.

"Your affiant further says that he conducted the examination of all of the witnesses touching bribery charges appearing before said grand jury, with the exception of John B. Wellcome, who was not examined by your affiant, and who, in the judgment of your affiant, considering the character of the testimony adduced before said grand jury, should not have been brought before said grand jury, as will appear further on; that all of the witnesses appearing before said grand jury were likewise examined by said Odell McConnell, and that the examination of Mr. Wellcome was conducted entirely by the said Odell W. McConnell.

"Your affiant further says that he made a stenographic report of the testimony given before said grand jury, and at-

taches hereto, in narrative form, all of the testimony adduced before said grand jury, except in the few instances where the testimony appears by question and answer; that the testimony affixed hereto is correct, and represents substantially all of the testimony of any materiality adduced before said grand jury during its session until the time when the report hereinafter set forth was made by said grand jury, and the report thus made was based exclusively upon the testimony herewith set forth.

"'That on the 26th day of January, 1899, the said grand jury completed its investigation of said bribery charges, and reported to the said Hon. Sidney H. McIntire, judge of the district court of the First judicial district of the state of Montana, in and for the county of Lewis and Clarke, as follows:

" 'In the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clarke.

" 'In the Matter of the Grand Jury.

" 'To the Honorable Sidney H. McIntire, Judge of the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clarke:

" 'The grand jury of Lewis and Clarke county, state of Montana, duly impaneled, sworn, and charged on the 14th day of January, A. D. 1899, herewith submit the following report of its deliberations upon the charges made by the committee of investigation appointed by the Sixth legislative assembly of the state of Montana, now in session:

" 'We have been in session ten days, and have examined forty-four witnesses, and have also examined all papers, documents, and other legal evidence touching the questions under consideration, and have had produced before us all witnesses who we had reason to believe could shed light upon the questions of bribery, perjury and conspiracy. In the interrogation of witnesses, and in the construction of the law appertaining to matters before us, we have been ably assisted by the attorney general and the county attorney of Lewis and Clarke county.

" 'We have carefully weighed all the evidence submitted to us, and, while there has been some evidence which tends to show that money has been used in connection with the election of a United States senator, it has been contradicted and explained in such a way that all the evidence introduced before us, taken together, would not, in our judgment, warrant a conviction by a trial jury.

" 'While we have not finally concluded our labors, we deemed the investigation of the matters relating to bribery, perjury, and conspiracy of so paramount importance that a full report on these should be made before taking up other matters cognizable by us, and bringing in a final report.

" 'Respectfully submitted.

" 'C. F. Ellis, Foreman.'

"Your affiant respectfully shows and says that upon the presentation of said report he objected to its acceptance, and that in the event this report was final, so far as the investigation of bribery charges or the commission of conspiracy and bribery went, he asked that another grand jury be impaneled to take up the investigation of these bribery, perjury, and conspiracy charges. That, as an item of evidence, were thirty thousand dollars alleged to have been deposited with one Fred Whiteside, in consideration for which votes should be cast for W. A. Clark for the office of senator of the United States, and that, so long as said evidence had a physical existence, with all the participants, as shown by the testimony, appearing before said grand jury, an investigation which failed to make findings for bribery or perjury was incomplete.

"But your affiant says: That, respecting his said application to secure a further and more effective investigation, the Honorable Sidney H. McIntire, judge of said court aforesaid, refused to impanel another grand jury, and received said report as a final report, so that no further investigation was conducted by said grand jury then impaneled respecting those bribery charges.

"Respecting the proceedings had upon the submission of said report, the minutes of the court, of date January 26, 1899, read as follows:

" 'The grand jury came into court this day, and, upon be-ing called, all answered to their names. Whereupon the court asked if they had anything to report. Whereupon the fore-man of said grand jury, in the presence of the grand jury and in open court, presented to the court a partial report in writ-ing. Whereupon the said partial report was read by the clerk by order of the court. Whereupon the attorney gener-al of the state of Montana addressed the court in reference to said report, objecting to the receipt of same, and requesting the court to impanel another grand jury. Whereupon the court ordered that the said partial report of the said grand jury be received and filed, and the partial report was then and there duly filed by the clerk, and thereupon the grand jury retired to their room to continue their labors.'

"That no further investigation was had by said grand jury, until finally discharged, of the charges of bribery, perjury, and conspiracy consequent upon the alleged use of money as hereinbefore set forth.

"Your affiant further says that no information has been filed against the said John B. Wellcome, charging him with the crime of bribery or any other offense, and there is not now pending in any court, so far as your affiant is informed, any charge for any acts of bribery alleged to have been committed by him as set forth in the petition for disbarment now on file in this court.

"That during the sessions of said grand jury the question of the propriety of securing the presence of John B. Wellcome before said grand jury to testify arose, and your affiant verily believed that some risk attached to his being compelled, through the process of the court, to appear before said grand jury, in the event an indictment was found against him. Sec-tion 200 of the Penal Code of the state of Montana provides as follows:

" 'A person offending against any provision of any section of this Code relating to bribery is a competent witness against other persons so offending, and may be compelled to attend and testify on any trial, hearing, proceeding or investigation

in the same manner as any other person, but the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying to the giving of a bribe which has been accepted shall not thereafter be liable to indictment, prosecution or punishment for that bribery, and may plead or prove the giving of testimony accordingly in bar of such indictment or prosecution.'

"Notwithstanding the risk attendant upon the presence of John B. Wellcome before said grand jury, and of his testifying regarding bribery charges then under investigation, by reason of the provisions of this section, the said Wellcome was subpœnaed to appear, and did appear, before said grand jury, and was examined as a witness respecting said bribery charges; and further affiant saith not.''

The attorney general filed with his own affidavit one made by Fred Whiteside, in which affiant says that in the senatorial contest had during the session of the Sixth legislative assembly of the state of Montana, in 1899, the people of the county of Lewis and Clarke, which is the county in which the seat of government is situate, "were overwhelmingly favorable to the candidacy of W. A. Clark''; that the reason for this sentiment was that the people of said county "felt that they were discharging an obligation due to the said Clark on account of the assistance rendered to the said county of Lewis and Clarke in the selection of the city of Helena as the state capital, and that any means which would accomplish the election of said W. A. Clark were justifiable against the opposition which was offered to his election.'' Affiant further says that the sentiment of said county was that no indictment should be found against Wellcome, even though he was guilty of the acts of bribery alleged to have been committed by him, that the press and public sentiment indicated opposition to an indictment against Wellcome; and that the sentiment then existing has not abated to any appreciable extent.

Some 24 different counter affidavits were filed in behalf of the accused. These affidavits, for the most part, were made

by residents of Lewis and Clarke county, Mont. Affiants therein stated that there never was at any time during the senatorial contest a sentiment among the people of Lewis and Clarke county that any means were justifiable which would result in the election of W. A. Clark as United States senator, and that the people did not feel that any improper means would be justifiable against the persons who were opposed to his election; and, further, that there never was any sentiment against the finding of indictments by the grand jury empaneled in the district court of Lewis and Clarke county to investigate the charges of bribery, fraud, and conspiracy, but, on the contrary, there was a strong wish and an expressed desire that justice should be done; that neither the press of the city of Helena, nor the people of said city, expressed opposition to the finding of an indictment, but, on the contrary, the general feeling was that the grand jury should and would do its duty, and that a full, fair, and impartial hearing would be given to any case presented; and that the sentiment at that time prevailing has not changed, and affiants believe that full justice can be had in the courts of Lewis and Clarke county.

The Honorable Sidney H. McIntire, one of the judges of the district court of the First judicial district of the state, made the following affidavit, which was also filed in behalf of the accused:

"I am one of the judges presiding in the First judicial district court in the state of Montana, and the one who acted in the matter of the grand jury proceeding referred to in the affidavit of the attorney general filed herein. When the request was made by the attorney general that I call another grand jury to investigate the charges of bribery, the partial report of the existing grand jury was before the court for acceptance or rejection. In this particular report that grand jury stated, in substance, that all the evidence produced before them was insufficient, in their judgment, to justify the finding of indictments by the grand jury, or conviction by a trial jury. No showing, by evidence, affidavits, or otherwise,

in support of his request, was made by the attorney general, either to the effect that indictments should have been found by that grand jury, that under the evidence available another grand jury would find indictments, or that by corruption or disregard of their oath the then grand jury wrongfully refused to find indictments in the face of sufficient evidence. I regarded the report of the then grand jury as final and conclusive upon the matters investigated by them, in the light of the showing made before me. No valid reason was suggested why the matters should be submitted to another grand jury upon the same evidence, and I refused the attorney general's request."

Counsel for the accused have filed their objections to the sufficiency of the accusation and the affidavits in support thereof on the following grounds:

"(1) They fail to show that all means to set in motion the machinery of the criminal law have been exhausted in the county or district having jurisdiction of the alleged offenses, in this:

(a) "The request was for resubmission to another grand jury, and made before the one then acting had made final report or been discharged, and was made on no other showing than the partial report itself.

(b) "It does not appear that any request for order of resubmission was ever made to the other presiding judge of the First judicial district, to whom, by rule of court, is generally confided the criminal business in the district.

(c) "It does not appear that any request has ever been made of either judge for an order directing the county attorney to file an information.

(d) "There is no charge that either judge or the county attorney would not fully discharge all official duty, if called on to act.

(e) "The showing discloses that Judge McIntyre fully discharged every official duty devolving on him in the matter.

(2) "The Whiteside affidavit is immaterial, as neither the community nor the public prefers an accusation of crime, or

orders its preferment, and the state has a perfect right to change the place of trial to another locality when general prejudice is shown to exist.

(3) "The 'synopsis' attached to the Nolan affidavit may not legally be disclosed or considered on this hearing. Said synopsis does not purport to be the whole evidence, or the substance thereof, but only the substance of so much thereof as the affiant, Nolan, considered, in his judgment, material. The evidence in said synopsis discredits itself.

(4) "The said synopsis of evidence is no stronger than, and lends no additional force to, the direct accusations of Whiteside, already before the court, and gives no additional reason for taking jurisdiction.

(5) "The presence of Wellcome before the grand jury is no bar to a further criminal prosecution.

(6) "The grand jury's action is no bar either to a resubmission to another grand jury or to the filing of an information.

(7) The verification is insufficient."

The accused also moves the court to strike from the affidavit of Nolan, filed in support of the accusation, the exibit denominated "Synopsis of Evidence before Grand Jury," on the following grounds:

(1) "The 'synopsis' attached to the Nolan affidavit may not legally be disclosed or considered on this hearing.

(2) "Said synopsis does not purport to be the whole evidence, or the substance thereof, but only the substance of so much thereof as the affiant, Nolan, considered, in his judgment, material.

(3) "The evidence in said synopsis discredits itself."

The question which we shall briefly consider and decide is, does the showing now made in support of the accusation present reasons sufficiently cogent to warrant and to require us, in the proper exercise of our discretion, to take jurisdiction by proceeding to inquire into the charges made against the accused, a member of the bar of this court? We agree with counsel for the accused that the affidavit of Whiteside, stating

that there was a prejudice in the city of Helena and county of Lewis and Clarke in favor of the election of Clark as United States senator, and against the indictment of Wellcome for alleged acts of bribery, is not material to this motion. Whiteside does not say that the grand jury which investigated the charges of bribery were moved by this local sentiment, or that the grand jury were corrupt or acted from improper motives, or that the judge of the district court was in any way or at all so affected, or was influenced in any degree by it. We have therefore eliminated the entire matter of alleged prejudice or sentiment from our consideration.

The record before us, then, shows the following condition of affairs: It shows that the matter of the alleged bribery of members of the legislature in connection with the election of a United States senator was inquired into by a grand jury called by the Honorable Sidney H. McIntire, judge of the district court of the First judicial district; that the grand jury made a report, stating that they had examined 44 witnesses, and various papers, documents and other legal evidence, touching the charges of bribery of members of the legislature, and had considered all the evidence that they believed could shed any light upon the questions of bribery, perjury or conspiracy, but that they had not sufficient evidence before them, in their judgment, to warrant a conviction by a trial jury, and that for these reasons, presumably, no indictment was found or presented. It next appears that the attorney general, at the time that the grand jury made its report consequent upon their investigation upon matters relating to alleged bribery, perjury and conspiracy, asked the court to impanel another grand jury to take up the investigation of these same charges; accompanying the request with the statement that, as an item of evidence, there were $30,000 alleged to have been deposited with Whiteside in consideration of votes to be cast for Clark for senator, and that so long as this evidence existed, and with all of the participants appearing before the grand jury, as shown by the testimony, their investigation, which resulted in no findings of bribery or perjury, was incomplete. The

judge of the district court refused to impanel another grand jury, and ordered the partial report as made by the grand jury to be filed, and directed the grand jury to retire and continue their labors. No further investigation was had respecting the bribery charges, and no further proceedings have been instituted under the criminal statutes of the state, charging Wellcome with bribery or any other offense; nor is there pending now in any court any charge for any acts of bribery alleged to have been committed by Wellcome, as set forth in the petition for disbarment filed in this court.

In our opinion, it matters not what the reasons were which moved the judge of the district court to deny the request of the attorney general to impanel another grand jury. Assuming that the motion was addressed to his discretion, whether or not he acted wisely or unwisely is not of importance. The fact that he declined to act is material, however, and has been considered of significance by us. The evidence heard by the grand jury, and which accompanies the showing now made by the attorney general, is also material. The failure to lay this evidence before the lower court when it was asked to call another grand jury cannot control the exercise of our discretion in this original proceeding to disbar. The office of that testimony in this court and at this time is to support the application of the attorney general by furnishing reasons why we should, in our discretion, hear these charges, to inquire into the truth of which we have original jurisdiction. For this purpose the evidence is competent. And we are cited to no statute or decision against its use for such a purpose. We have examined the evidence. It tends strongly to show bribery of members of the legislature or conspiracy. If it is true, and there was bribery, it tends further to directly inculpate Wellcome, a member of the bar of this court. On the other hand, if it is untrue, Wellcome is entirely exculpated by the necessary conclusion from the evidence that there has been a conspiracy which implicates others in grievous crimes. It must be laid down as a reiteration of our former decision that a lawyer who is guilty of willful bribery of members of

the legislature is unworthy of the honors and responsibilities accompanying the office of an attorney and counselor at law; and if, after fair, impartial, and searching investigation, a lawyer be clearly proven guilty of such an offense, it is due to the profession, and to the courts of which he is an officer, and to the state, that his license to practice be revoked, or that he be suspended from the performance of the duties of his high office for a stated period of time. Lord Chief Justice Cockburn, *in In re* Hill, L. R. 3 Q. B. 543, said: "When an attorney does that which involves dishonesty, it is for the interest of the suitors that the court should interpose and prevent a man guilty of such misconduct from acting as attorney of the court. * * * I should add, there is one consideration I omitted, and which I think is entitled to great weight. It is that put to us in the course of the discussion, namely, that if these facts had been brought to our knowledge upon the application for this gentleman's admission, we might have refused to admit him; and I think the fact of his having been admitted does not alter his position. Having been admitted, we must deal with him as if he were now applying for admission; and as, in the case of a person applying for admission as an attorney, we should have considered all the circumstances, and either have refused to admit or have suspended the admission for a certain time, so, where a person has once been admitted, we are bound, although he was not acting in the precise character of an attorney, to take notice of his misconduct."

In line with the view of the English judges is the following argument of Chief Justice Whipple *in In re* Mills, 1 Mich. 394, where he said: "If our courts are restricted to the causes set forth in the statute, there would seem to be a lamentable defect in our laws. The words 'deceit' and 'malpractice' in the statute have direct reference to the conduct of an attorney, as such attorney; and, if the authority of our courts to remove or suspend an attorney is to be thus restricted to *official* delinquencies, it follows that, however degraded his moral character may be,—whatever fraud or deception he may

be guilty of,—if such fraud or deception is unconnected with his *professional* acts, he is deemed worthy of a place at the bar. In other words, an individual may be guilty of acts which involve a violation of every moral precept, and yet retain our license and practice in our courts, provided these acts were committed in his *private*, and not *official*, capacity. If it is of consequence to the community that those who are in any way concerned in the administration of justice should possess a reputation unstained by those vices which in their nature tend to degrade and corrupt, then is it important that a power should be lodged in some tribunal to purge the bar of such as may have become the victims of such vices. That no person can faithfully and honorably discharge the delicate and responsible duties of an attorney, unless fortified by strong moral principles, is too clear for argument. The *nature* of those duties necessarily implies the possession of high moral character, in order to their conscientious performance. This our statute contemplates, for it is only those who are 'approved by the court for their good character' who are permitted to wear the honors and bear the responsibilities of an attorney. If it be neccessary, to gain admission to the bar, that a person should furnish the evidence of 'moral character,' as required by the twenty-seventh section, how infinitely greater the necessity that he should actually possess that character when he shall have entered upon the active and exciting theater of professional life, where he is beset at every moment by temptations well calculated to test the firmness of his principles." See, also, *Baker* v. *Com.*, 10 Bush 592; *Smith* v. *State*, 9 Tenn. 1 Yerg. 228; *State* v. *McClaugherty*, 33 W. Va. 250, 10 S. E. 407; *In re* Blake, 3 El. & El. 33; *In re* O——, 73 Wis. 602, 42 N. W. 221.

It is not necessary that, as a condition precedent to the exercise of the jurisdiction of this Court in a disbarment proceeding, repeated efforts be made to secure an indictment for crime. Nor will we hold that it is requisite that the attorney general appeal several times to one judge, or one time to several judges, to impanel a grand jury to investigate

charges of bribery, where there has been an investigation into the very charges which are made the foundation for disbarment proceedings by a grand jury duly impaneled under the forms of law, and specially directed to inquire into the truth of such charges.

We did not hold, and we shall not now decide, that unusual and extraordinary procedure be invoked under the Criminal Code before our jurisdiction will be exercised. It is disclosed by this record that the ordinary and usual forms of the criminal practice and procedure were pursued, by the investigation had by the grand jury called by Judge McIntire. This, we believe, was enough to justify the institution of proceedings in the Supreme Court. But, if it were necessary that further steps should have been taken, it affirmatively appears that they were pursued in this matter; for it was a somewhat unusual and extraordinary course that the attorney general adopted when he made his statement to the district court to the effect that there ought to have been an indictment for some crime, in the light of the evidence before the grand jury, and when he requested the court to impanel another, to the end that there might be a resubmission or re-examination into the charge.

Nor should our discretion be turned against hearing this matter because no further steps under the Criminal Code have been taken since the request for another grand jury was denied. Whatever argument can be fairly deduced from the inaction of counsel for the state since the grand jury made its report tends to lend additional support to the strength of the reasons why, in the light of the showing, this court should proceed at this time, for it would seem improbable that any criminal action will be had. This is not a criminal prosecution, nor an aid to a criminal investigation (*Jackson* v. *State*, 21 Tex. 668; *Case of Austin*, 5 Rawle 191), but is to ascertain if the accused is worthy of the confidence and is possessed of that good moral character which is a condition precedent to the privilege of practicing law, and of *continuing* in the practice thereof. The case is extraordinary,—without par-

allel, so far as we are advised; but, as it is presented at this time, we conceive our duty to be to order the accused to answer the charges, and to require him to do so within 10 days from now.

The form of the verification of the petition is as follows:

"Fred. Whiteside, being first duly sworn, upon oath deposes and says, that he has read carefully the foregoing accusation against John B. Wellcome, and that the charges therein contained are true, except in those instances where the allegations are made upon the best information and belief of affiant; and as to such allegations thus made, he believes them to be true.　　　　　　　　　　　　　FRED. WHITESIDE."

It is said that this form is insufficient, under Section 420 of the Code of Civil Procedure, which provides, "The accusation must state the matters charged, and be verified by the oath of some person to the effect that the charges therein contained are true." The objection of the accused is aimed at the entire accusation, and is clearly too broad, inasmuch as portions of the accusation consist of allegations positively made. It must therefore be overruled.

The court expresses the opinion that a more correct conclusion can be reached in the case by the justices hearing the testimony themselves, if it shall come to a hearing at all. The court will hereafter set a time for further proceeding.