IN RE THRESHER.

(No. 2,260.)

(Submitted January 24, 1906. Decided February 10, 1906.)

*Attorneys — Disbarment — Forgery—Supreme Court—Jurisdiction—Crimes and Misdemeanors—Deceit—Evidence.*

Attorneys—Disbarment—Forgery—Evidence.
   1. To warrant a finding against the accused in a disbarment proceeding, on a charge of forgery of an undertaking on attachment, the evidence must be clear and definite.

Same—Supreme Court—Jurisdiction—Crimes and Misdemeanors.
   2. The supreme court has exclusive jurisdiction in a disbarment proceeding to hear the evidence and determine the truth of charges of crimes and misdemeanors involving moral turpitude, whether committed within this jurisdiction or not, and whether within or without the sphere of official duty.

Same—Crimes Falling Without Sphere of Official Duty.
   3. Where the crime charged against an attorney, in a disbarment proceeding, falls clearly without the sphere of official duty, it is discretionary with the supreme court to hear and determine it upon the merits prior to a criminal prosecution and conviction in the proper court.

Same—When Supreme Court Will not Take Jurisdiction.
   4. The supreme court will refuse to entertain an accusation against an attorney in a disbarment proceeding, where the crime charged falls clearly without the sphere of official duty, unless urgent reasons are shown why it should do so.

Same—District Courts—Criminal Proceedings.
   5. Where the conduct charged as ground for the disbarment of an attorney falls within the sphere of official duty, the supreme court will hear and determine the matter, regardless of the fact that it amounts to an offense against the criminal laws of the state, and will not wait to inquire whether criminal proceedings have been instituted and prosecuted to a conclusion.

Same—Disbarment—Nature of Proceeding.
   6. A proceeding in disbarment is in no sense a criminal investigation, but its purpose is to ascertain whether the accused attorney is worthy of confidence and possessed of that good moral character which is a condition precedent to the privilege of practicing law and of continuing in the practice thereof.

Same—Forgery.
   7. An attorney into whose hands a check for $49.60, payable to a justice of the peace, had been placed by a client to cover the expenses of an appeal from a justice of the peace to the district court, and who thereupon, forging the indorsement of the justice, obtained the money and appropriated it to his own use, the client thus failing to secure the appeal, is unworthy of confidence and guilty of conduct which merits disbarment.

Same—Deceit.

8.   An attorney who, after securing an order of court to that effect, withdrew the sum of $414.90 deposited by a client with a clerk of court as a tender, after final disposition of the action by the supreme court adverse to his client, and who thereafter, in reply to inquiries by the client, repeatedly stated that the money was still in the hands of the clerk, where it should remain until the end of the litigation, so as to keep the tender good, notwithstanding the funds had long been misappropriated by him, and, who under pretense that he was still conducting the litigation in her behalf, obtained the additional sum of $65 at various times as court fees and expenses, should be disbarred.

APPLICATION for the disbarment of B. S. Thresher.   Judgment of disbarment.

*Mr. Jesse B. Roote,* for Complainant.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This proceeding was instituted in this court by one G. R. Nickey, under subdivision 5 of section 402 of the Code of Civil Procedure, as amended by the Act of 1903 (Session Laws, 1903, page 51), to obtain a judgment of disbarment against B. S. Thresher, a member of the bar of Montana.

The amended accusation, duly verified by persons cognizant of the facts stated therein, sets forth, in four separate counts against the accused, acts of deceit and malpractice, and crimes involving moral turpitude, of which it is alleged the accused has been guilty in connection with his office as an attorney.   The accused having failed to appear at the time set for answer, the matter was set for hearing of the evidence on the merits on January 24, 1906.   On that day the accused caused to be filed written objections to the first and second counts, and denials of the third and fourth, but was not present in person nor represented by counsel; nor did he signify any purpose or wish to contest the charges or express any desire for delay in order that he might prepare his defense.   Indeed, from affidavits filed at the time, it appears that the accused was attending to his ordinary duties in the courts of Silver Bow county, and seemed indifferent as to whether or not the court proceeded to the hearing

or as to what the result might be. The court considered and overruled the objections to the first and second counts, and thereupon proceeded to hear the evidence, as if denials had been interposed to all of them. No evidence was introduced in support of the first count and it was, by permission of the court, withdrawn.

The evidence in support of the second count, which charges the forging of an undertaking on attachment in an action in the district court of Silver Bow county, is not so clear and definite as to justify a finding thereon against the accused. For this reason notice of it will be omitted and the merits of the controversy will be determined by a consideration of the evidence in support of the third and fourth counts only.

The third count alleges, in substance, that on February 29, 1904, an action was begun before George F. Danzer, one of the justices of the peace in and for Meaderville township, Silver Bow county, by one W. J. Christie against G. R. Nickey, the accuser, and others, to recover judgment for $38.50 for services performed by plaintiff for defendants; that upon a trial the plaintiff had verdict and judgment for $35 and costs, taxed at $12.50; that B. S. Thresher was attorney for defendants; that on March 25th, G. R. Nickey instructed him to take an appeal to the district court; that he delivered to him, the said Thresher, a check, drawn by himself on the First National Bank of Butte, for the sum of $49.60, payable to said justice of the peace or his order, the amount called for thereby to be deposited with the said justice in lieu of an undertaking on appeal; that said Thresher, as his attorney, accepted the check and promised to deliver it to the justice for the purpose aforesaid and take the appeal, but that, instead of delivering it to the justice, as he undertook to do, on March 26th, the following day, he forged the indorsement of said justice thereon and thereby fraudulently procured the amount of money called for and appropriated it to his own use.

In substance, the fourth count alleges that on June 3, 1897, an action was commenced in the district court of Silver Bow

county by one Ruth A. Burton, plaintiff, against one Henry Kipp, defendant; that during the pendency of said action and prior to May 14, 1904, there had been deposited in the district court by Ruth A. Burton the sum of $400 in cash as a tender to the defendant in the action; that the court on May 14, 1904, made an order directing the treasurer of Silver Bow county, with whom the money had been deposited by the clerk of the court as required by law, to pay over to the clerk the said sum of $400, and further, that the clerk pay the same to Ruth A. Burton or to either of her attorneys, J. J. McHatton or B. S. Thresner; that on the same day B. S. Thresher received the said amount from the clerk, and thereupon, disregarding his duties in the premises and intending to cheat and defraud said Ruth A. Burton, appropriated said amount to his own use; that, though repeated demand has been made upon him by Ruth A. Burton, he has failed and neglected to pay her the said sum or any part thereof; and that, notwithstanding the fact that he had so drawn the money from the hands of the clerk under the order of the court, he stated falsely to the agent of Ruth A. Burton that the money was still in the hands of the treasurer of Silver Bow county, well knowing at the time that he had received the said sum as aforesaid and appropriated it to his own use.

Under the view we entertain of this case, it is not important to consider whether criminal proceedings have been instituted and prosecuted against the accused resulting in his conviction of the crimes charged. Subdivision 5 of the section under which the charges are preferred is broad enough to include crimes and misdemeanors of all kinds involving moral turpitude, whether within this jurisdiction or not, and whether within or without the sphere of official duty. If the charge sets forth such a crime, this court has exclusive jurisdiction to hear the evidence and determine the truth of it. Where the crime falls clearly without the sphere of official duty, it is discretionary with the court to hear and determine it upon the merits prior to a criminal prosecution and conviction in the local court; and it will refuse to entertain the accusation in the absence of urgent reasons why

it should do so. (*In re Wellcome*, 23 Mont. 140, 58 Pac. 45; Id., 23 Mont. 213, 58 Pac. 47.) It is but just and fair to the accused that it should refrain from investigating and passing judgment upon such a charge, to the end that his rights may not be prejudiced. But where the conduct charged as the ground for removal falls within the sphere of official duty, as does that charged in this case, it is of no moment that it amounts to an offense against the criminal laws, nor whether criminal proceedings have been instituted and prosecuted to a conclusion.

This proceeding is in no sense a criminal prosecution; nor is it in aid of a criminal investigation. Its purpose is to ascertain whether the accused is worthy of confidence and possessed of that good moral character which is a condition precedent to the privilege of practicing law and of continuing in the practice thereof. (*In re Wellcome*, 23 Mont. 213, 58 Pac. 47; *In re Weed*, 26 Mont. 241, 67 Pac. 308.) "The end to be attained is not punishment, but protection." (*Case of Austin*, 5 Rawle, 191.) And the determination of the fitness of the person under consideration to continue in the practice being exclusively a matter for this court, it will not await the action of the criminal court and be controlled by the result of a prosecution, even though the finding of this court may be in effect that the accused is guilty of a crime.

The evidence submitted in this case leads to but one conclusion, namely, that the charges contained in the third and fourth counts are true. It appears, as charged in the third count, that Nickey, one of the defendants in the case of *Christie* v. *Nickey et al.*, was dissatisfied with the result of the trial and desired to take an appeal to the district court. He was about to leave the county of Silver Bow to be gone for several weeks, and, in order that his rights might be preserved, he put into the hands of the accused, who had been and still was his attorney in that case, the check mentioned in the charge, intending the sum of money payable thereon to the justice, to be used, to the amount of the judgment and costs ($47.50), as a deposit in lieu of an undertaking on appeal. The balance was presumably intended to

pay for the transcript. He had a right to make the deposit. (Code of Civil Proc., sec. 1763.) He had a right to intrust the matter to his attorney. The latter, however instead of meriting this confidence, forged or caused to be forged the indorsement of the justice, obtained the money and appropriated it to his own use; and not only that, but failed to secure the appeal, thus further betraying the trust reposed in him. Whether these acts be designated as malpractice or a crime, in the absence of explanation the conclusion must be that the accused is unworthy of confidence.

So in regard to the evidence under the fourth count. Ruth A. Burton at the time she employed the accused about May 14, 1904, had been engaged in litigation over some property in the city of Butte. The action had been brought by her to determine an adverse claim to it by one Kipp under a purchase by him at an execution sale. Upon the filing of her complaint she paid into court $490, the sum paid for the property by Kipp with interest. This was deposited by the clerk with the county treasurer, as his duty under the law required. The result of the litigation was adverse to the plaintiff (*Burton* v. *Kipp*, 30 Mont. 275, 76 Pac. 563). J. J. McHatton had up to this time been her attorney. Upon his telling her, as he did, that nothing more could be done for her, she consulted the accused, who represented to her that the case was not yet hopeless and undertook to prosecute it further, with the agreement that he was to be paid if he was successful, but that he should have nothing in the event of failure. Mrs. Burton was to pay court fees and other expenses. Questioned by Mrs. Burton as to what should be done with the deposit, he told her that it should be allowed to remain where it was, in order to keep her tender good until the end of the litigation. What was being done in the case does not appear; but immediately after his employment, he, as her attorney, and without her knowledge, obtained an order of the court permitting the deposit to be withdrawn and received it from the clerk less the amount deducted by the treasurer for taxes while it was in his hands. The amount received was $414.90. Fur-

ther, under pretense that he was conducting the litigation in her behalf, he induced Mrs. Burton to pay him at various times in small amounts a total of $65, by representing to her that these amounts were necessary to pay court fees and other expenses. Finally, after some months, through the intervention of friends she was able to purchase the claim of Kipp and clear up the title. During the negotiations the question came up again as to the disposition of the deposit, Mrs. Burton desiring Kipp to take it as part payment of the amount agreed upon with him as necessary to effect the settlement of the controversy. At this time, though Thresher had already withdrawn and misappropriated it, he asserted again and again that it was still in the hands of the county treasurer and could be withdrawn at any time.

It thus appears that the accused is wholly destitute of that degree of honesty and integrity which every member of the bar should possess, and which should characterize all of his dealings with those who repose trust and confidence in him.

The judgment of the court is, that B. S. Thresher be removed from his office as attorney and counselor at law, and that his name be stricken from the roll.

Mr. Justice HOLLOWAY concurs.

Mr. Justice MILBURN: I concur in the decision and order of the court, but not being fully satisfied that we may find an attorney guilty of felonious conduct in the absence of any attempt to try and convict him on the charge of felony in the district court, I withhold my concurrence in what is said in the opinion as to the accused being guilty of felony. Independently of actual violation of the criminal laws of the state, there is enough proof to show conclusively that Mr. Thresher has been guilty of conduct involving moral turpitude in connection with his office as attorney and counselor, and he should be disbarred.