Argued January 31, application granted March 7, 1922.

## RE APPLICATION OF JESSE CRUM FOR ADMISSION TO THE BAR.

(204 Pac. 948.)

**Attorney and Client—Right to Practice a Privilege Conferred or Withheld According to Policy of State.**

1. The right to engage in the practice of law is a privilege conferred or withheld, in accordance with the general policy of the state expressed by statutory enactment.

**Attorney and Client—State Policy to Admit No One to Bar not Possessing Good Moral Character.**

2. The policy of the State of Oregon, as expressed by Section 1077, subdivision 2, Or. L., is to admit no one to the bar who does not possess a good moral character.

**Attorney and Client—Objections to Admission Supported by Sufficient Evidence Destroys Prima Facie Case Made by Applicant.**

3. On application for admission to the bar, where objection is made, if the allegations of the objector are supported by sufficient evidence, the *prima facie* showing made by applicant's affidavits fails.

**Attorney and Client—Supreme Court has Authority and Responsibility to Determine Qualifications for Admission to Bar.**

4. The law-making power has placed the authority and responsibility upon the Supreme Court to determine who are qualified to become its officers as attorneys.

**Attorney and Client—Applicant for Admission to Bar may Confront and Cross-examine Witnesses Under Rules of Evidence.**

5. On application for admission to the bar, the applicant is entitled to confront the witnesses, to subject them to cross-examination, and to invoke the protection of the rules of evidence.

---

On power of legislature to prescribe the qualifications of attorneys, see notes in 10 Ann. Cas. 198; 10 L. R. A. (N. S.) 289.

Attorney and Client—Legislature may Provide Qualifications and Regulations for Admission to Bar.

6. Subject to constitutional limitation, the legislative assembly has the right to prescribe the qualifications under which its citizens may engage in the practice of law.

Attorney and Client—Attorney "Officer of Court."

7. Section 1076, Or. L., makes an attorney at law an officer of the court.

Attorney and Client—Proceedings for Admission and Disbarment Judicial.

8. Proceedings had for admission and disbarment of attorneys at law are alike judicial.

Attorney and Client—Accusations on Objections to Admission to Bar Raise no Presumption of Guilt.

9. Where objections are made to an application for admission to the bar making accusations against applicant, no presumption of guilt arises from such accusations.

Attorney and Client—Evidence Insufficient to Show That Applicant for Admission to Bar Knowingly made False Affidavit.

10. Where, on an application for admission to the bar, objector accused applicant of having made a false affidavit in another proceeding, evidence *held* insufficient to show that the affidavit contained matter knowingly false.

Attorney and Client—Applicant for Admission to Bar Held not Guilty of Failing to Notify City Attorney in Another Proceeding.

11. On an application for admission to the bar, where objection was made that applicant, who was city recorder, failed to notify the city attorney to appear in a case involving the city, *held,* that no such duty was imposed upon the city recorder, and hence such failure could not constitute a ground for refusal of the application.

Attorney and Client—Docket Entries Held not to Support Objections to Admission to Bar.

12. On objections made to application for admission to the bar that applicant, who was a city recorder, had been guilty of unlawful conduct connected with a case wherein he appeared for the city, evidence consisting of docket entries *held* not to support the objection.

Attorney and Client—Evidence Insufficient to Sustain Objection to Admission to Bar.

13. On objections to an application for admission to the bar, evidence *held* insufficient to show that applicant had changed the records of the city whereof he was recorder.

On appeal from the decision of the Board of Bar Examiners of the State of Oregon.

In Banc.

Jesse Crum has made application to be admitted as an attorney at law of the State of Oregon.

In accordance with Rule 39 of the Supreme Court, he filed with the clerk hereof a certificate showing his educational qualifications and setting forth that he has studied law for three years, together with affidavits of three responsible citizens, two of whom are members of the bar, stating the time and the circumstances under which the affiants have known the applicant, and further stating that Crum is a person of good moral character.

Rule 38 provides that:

"The examination of all applicants for admission to practice in this state shall be conducted by a board of examiners under the direction of the Supreme Court, which board shall be composed of five members of the Oregon bar in good standing, to be nominated by the President of the Oregon Bar Association and confirmed and appointed by the Supreme Court for a term of three years from date of appointment * * ."

Rule 40 provides, in part, that:

"No such applicant shall be permitted to practice in the courts of this state, unless at least three members of said board, or the court on appeal from the decision of the board, shall deem such applicant to be duly qualified as to the requisite character, learning and ability. Upon such motion of any three members of said board such applicant shall be admitted, subject to the approval and confirmation of the Supreme Court."

In order "that an opportunity for investigation may be afforded before license is issued," Mr. L. Denham, the only lawyer engaged in active practice

at Elgin, the home of applicant, filed objections to his admission.   The objector avers, among other things:

"That the said Jesse Crum has resided at Elgin for about ten years last past, and engaged principally in the real estate and insurance business, during which time he has had a great deal of trouble before the courts and otherwise, and has a very unenviable reputation, being regarded by many as dishonest and unscrupulous, double dealing, and wholly unworthy of trust or confidence * * ."

An answer was filed by the applicant, denying the material averments contained in the objections, to which the objector replied.

The board of bar examiners thereafter heard evidence, and three of the five members thereof signed the following report:

"The board of bar examiners, to whom the Supreme Court referred for hearing and determination the question of whether or not the applicant, Jesse Crum, constituted 'fit material for membership at the bar,' finds and reports in the negative."

The two remaining members dissented.

APPLICATION GRANTED.

For the applicant there was a brief over the names of *Mr. R. J. Green* and *Messrs. Crawford & Eakin,* with oral arguments by *Mr. Green* and *Mr. T. H. Crawford.*

For the objector there was a brief and oral argument by *Mr. E. R. Ringo.*

BROWN, J.—1. The right to engage in the practice of the law is a privilege conferred or withheld, in accordance with the general policy of the state expressed by statutory enactment.

2. The policy of our state is to admit no one to the bar who does not possess a good moral character. The law of this state reads, at subdivision 2, Section 1077, Or. L.:

"An applicant for admission as attorney must show 'that he is a person of good moral character, which may be proved by any evidence satisfactory to the court.'"

Prior to taking his examination relating to the requisite learning and ability to practice law, the applicant made a *prima facie* showing of good moral character, as prescribed by our statute. Thereafter, his moral character was challenged by the objector herein, who filed a complaint containing numerous averments of misconduct on the part of applicant. Pending these proceedings Crum's certificate as an attorney has been withheld. The hearing was conducted along the lines usually followed in disbarment proceedings, which are analogous to the present proceeding. The immorality that rejects an applicant is ground upon which to disbar. Section 1091 of our Code provides that:

"Any member of the bar of the state shall be disbarred by the Supreme Court upon proper proceedings for that purpose, whenever it shall appear to that court that his conduct has been such that if he were then applying for admission to the bar, his application should be denied."

3. If the allegations of the objector are supported by sufficient evidence, the *prima facie* showing made by applicant's affidavits fails.

4. The proceedings in the matter at issue have been properly conducted. The end in view has been to ascertain the moral character of the applicant. There is but one question to be determined: Does

Jesse Crum possess the moral character requisite for admission to the bar of this state? The law-making power of the State of Oregon has placed the authority and responsibility upon this court to determine who are qualified to become its officers as attorneys.

"This power, however, is not arbitrary or despotic, to be exercised according to the pleasure of the court, but is judicial." *In re Day*, 181 Ill. 73 (54 N. E. 646, 50 L. R. A. 519); *Ex parte Secombe*, 19 How. 9 (15 L. Ed. 565, see, also, Rose's U. S. Notes).

5. In a proceeding of this kind, the applicant is entitled to confront the witnesses, to subject them to cross-examination, and to invoke the protection of the tried, wise and well-settled rules of evidence: *In re Eldridge*, 82 N. Y. 161 (37 Am. Rep. 558).

It has been written that:

"It is essential to the administration of justice according to law, that the recognized rules of evidence should be observed in this class of cases, as well as in all others." *People* v. *Amos*, 246 Ill. 299 (92 N. E. 857, 138 Am. St. Rep. 239).

Also, that:

"A proceeding for the disbarment of an attorney is in no sense a criminal prosecution, though the alleged causes therefor are criminal acts. Its purpose is to ascertain whether the accused is worthy of confidence and possessed of that good moral character which is a condition precedent to the privilege of practicing law * * : *In re Thresher*, 33 Mont. 441 [84 Pac. 876, 114 Am. St. Rep. 834, 8 Ann. Cas. 717]. While the proceeding is civil, and not criminal, yet more than a preponderance of the evidence is required, and the guilt of the attorney must be clearly established: *In re Evans*, 22 Utah, 366 [62 Pac. 913, 83 Am. St. Rep. 794, 53 L. R. A. 952]." *People* v. *Amos, supra,* note, 138 Am. St. Rep., page 243.

In *People* v. *MacCabe,* 18 Colo. 186 (32 Pac. 280, 36 Am. St. Rep. 270, 19 L. R. A. 231), the court said that:

"A court intrusted with the power to admit and disbar attorneys should be considerate and careful in exercising its jurisdiction; the interests of the attorney must in every case be weighed in the balance against the rights of the public; and the court should endeavor to guard and protect both with fairness and impartiality."

1 Thornton on Attorneys at Law, page 90, reads:

"All persons are interested in the rectitude of attorneys and may properly be permitted to oppose an application for admission by urging the moral disqualification of the applicant."

The same text-writer has written, at Section 62:

"The power to deny an application for admission because the evidence of good moral character is unsatisfactory 'is one of great delicacy, and should be exercised with extreme caution, and with a scrupulous regard for the character and rights of the applicant,' said the New Jersey Supreme Court. 'On the other hand,' continued the court, 'the standing of the profession must not be disregarded, nor must the court shrink from the performance of a clear duty, however embarrassing': *In re Attorney's License,* 21 N. J. Law, 345. The words 'good moral character,' in the statutes regulating admission to the bar include, of course, all the elements essential to make up such a character. Among these are common honesty and veracity." Citing *In re O——,* 73 Wis. 602, 618 (42 N. W. 221).

6. Subject to constitutional limitation, the legislative assembly has the right to prescribe the qualifications and provide the regulations under which its citizens may engage in the practice of law.

7. Our Code makes an attorney at law an officer of the court: Section 1076, Or. L.; *State* v. *Edmunson,* filed February 21, 1922.

8. Proceedings had for the admission and disbarment of attorneys at law are alike judicial: Weeks on Attorneys at Law (2 ed.), 157; 1 Thornton on Attorneys at Law, § 28.

Evidence that satisfies the court of the good moral character of an applicant for admission to the bar is required in all jurisdictions. The intent of our statutory enactment is that the court may have assurance that the applicant, if admitted to the bar, will honestly transact the business of an attorney at law.

The majority of the board reached a conclusion adverse to the admission of Crum to the bar, because of an alleged false affidavit made by him, and by reason of his averred misconduct in reference to an action in the Recorder's Court of the City of Elgin.

The affidavit alleged to be false was made by applicant for the purpose of having a default judgment set aside. The objector, representing the Inland Merchants' Association, instituted an action against one J. H. Morris as defendant, to collect a certain promissory note with accumulated interest, amounting to $56.02, and for cost and attorney's fees in the sum of $25. It is averred that Morris, the defendant, was served with summons on the nineteenth day of February, 1917, "and the same day Jesse Crum wrote the following letter":

"At request of Mr. J. H. Morris of this place, I herewith hand you check for $56.02, covering that certain note in full payment thereof given by Morris to Harvey and Regan, and which is at present owned by yourselves. Original amount of note being $45.00, and which at present time amounts with accumulated interest to $56.02 You will note that this check

is a receipt in full payment of this note, when endorsed. Mr. Morris says that he is willing to pay this amount in full settlement of the note, and if same is not satisfactory to you that it will then be up to you to collect what you can on the note.

"If, for any reason, you decline to accept this amount in full settlement of this note, you will return the enclosed check to the writer.

"Thanking you for your attention to the above, and awaiting the return of the cancelled note at your convenience, I remain,

"Yours very truly,<br>"JESSE CRUM."

The objector further avers that Crum wrote the foregoing letter without disclosing the fact that "an action had been filed to collect said note, but offered a settlement which would have avoided payment of attorney's fees and costs." He further says:

"The time for answering said complaint having expired and judgment by default entered, the said Jesse Crum appeared before the justice of the peace with an application to set the judgment aside, based upon his affidavit, duly sworn to before a notary public to the effect that the defendant had called upon him at a date later than the 19th of February and he understood from defendant service of summons had been made at this later date, otherwise he would have made answer."

The affidavit and the letter are not contradictory. For aught we know, Morris may have called upon Crum before the summons was served. He may have informed Crum of the amount that was due. Or, it might have been that the result of Crum's calculation of the amount due upon the note coincided with that of Denham's. There should be nothing extraordinary in the fact that the figures arrived at by Denham and Crum, if correct, were identical. The fact that the

amount admitted in the communication to be due
agreed with the amount alleged in the summons
served upon Morris to be owing is not proof of per-
jury. In truth, there is no evidence that can rise
above a suspicion of perjury. If Crum willfully and
knowingly made a false statement in the affidavit, he is
not suitable clay from which to mould a lawyer. How-
ever, the only evidence in the record pointing to Crum
as swearing to a matter willfully false might create a
doubt, nothing more.

9. We have already alluded to the fact that this
is not a criminal cause; and, further, it is not neces-
sary to prove the averment of willfully false swear-
ing, by the testimony of two witnesses, or one witness
and corroborating circumstances: Section 801, Or. L.
But it is necessary for the objector to do something
besides merely to accuse. No witness testifies to
any facts that establish the falsity of the affidavit.
There is no presumption of guilt arising from the
accusation. The presumption is the other way.
Morris does not testify that he informed Crum on
the nineteenth of February, or at all, that the action
had been instituted against him. In truth, Morris
was not a witness. The objector says, "Why did not
Crum produce Morris?" With equal relevancy Crum
can answer, "You have made the allegation, and the
burden of proof is upon you." Denham does not
testify that he or any other person told Crum that an
action had been instituted against Morris. No other
witness testifies that Crum knew that an action was
pending against Morris when the letter was written;
and to conclude that Crum did know of the action
is to conjecture that he knew it, and we have not
the right to guess a man's reputation away. It may
seem probable that Morris would have told Crum

all about the case, yet it has happened in the experience of every practitioner that some one of his clients has not always told all the facts concerning his case. If Crum had been employed by Morris in the action pending against him the natural course would have been to appear in the case, not to permit a judgment by default. He could at least have caused a reduction in the amount of attorney's fees demanded by the objector in the case.

10. In considering the evidence, it should be remembered that Crum was an insurance and real estate agent, and not a lawyer. It may be true that in the first instance Morris called upon him to have a letter written. One thing is certain: It cannot be said from the evidence that Crum made an affidavit that contained matter knowingly false. We will not discuss the immateriality of the alleged false matter for the reason that this is not a criminal cause, and for the further reason that a man with a character worth while would not willfully swear to a false statement, whether it be material or otherwise.

We next come to the averment by objector:

"That in October, 1915, while yet recorder of the City of Elgin, in a cause then pending before him wherein the City of Elgin was plaintiff and Mrs. John Woods and Miss Chloe Wright were defendants, the said Jesse Crum officiated as attorney for the private prosecutor while sitting as recorder, and tried the case with a jury of seven while the charter of the city provided six, and upon a retrial of the cause the said Jesse Crum did not advise your objector of the pendency of said cause, neither then, nor of the pendency of the charge upon the occasion of the first trial,—which was his duty, your objector being then city attorney. The defendants were found guilty."

11. Of course the jury should have consisted of six, instead of seven, members. The fact referred to in the foregoing objection goes more to the learning of applicant than to his integrity. As a matter of courtesy, Crum should have notified the city attorney to appear. However, we have examined the charter and the ordinance of Elgin, and nowhere do we find imposed upon the city recorder the duty of notifying the city attorney of any pending cause.

12. The objection above set forth avers that Jesse Crum officiated in the case of City of Elgin, Plaintiff, v. Mrs. John Woods and Miss Chloe Wright, Defendants, as attorney for the private prosecutor. The only proof the objector offers in support of that charge is a purported copy of the docket entry. Who made this copy we know not. Whether it was a true copy of the docket entry as originally made, we are not informed by convincing evidence. However, it is not an exact copy of the docket entry as it now exists. The purpose in offering and receiving this alleged copy was to establish that Jesse Crum acted in the capacity of attorney for the private prosecutor in the above case. The alleged copy does not sustain the objector's contention. On the contrary, it refutes his assertion that Crum officiated as attorney for the private prosecutor. That paper reads, in part: "Defendants appeared in person and by John Woods, Plaintiff appearing by Recorder Crum." The plaintiff was not the private prosecutor. The plaintiff was the City of Elgin. This was a cause prosecuted by the City of Elgin because of the offending against its ordinances by the defendants in the use of profane language and the commission of the crime of assault and battery. Four of the jurors in that case took the witness-stand and testified before

the board of bar examiners that Crum's conduct of the case was fair and impartial. The truth is that the city was not represented by counsel; but Crum, acting as city recorder, did, as is often done in incorporated cities and towns of the size of Elgin, interrogate the witnesses. This is also common practice in justice courts when the state does not appear by the district attorney, and very often when the justice is sitting as a committing magistrate. There is no evidence that tends to show that the recorder received any compensation from any person for acting in the capacity of attorney in the cause, or that he did act as such attorney. The only mistake, if any, in the entire matter is that Crum, in writing the docket entry—if he did write it—recited the following: "Plaintiff appearing by Recorder Crum." Had the recorder been actuated by a wrongful motive, he would not have set down in his docket the proof of his wrongdoing. This objection is, in the language of Mr. Justice McREYNOLDS, "toying with the immaterial."

13. It is now intimated that applicant, upon receiving copy of the objections, in February, 1921, containing the foregoing, became frightened and mutilated the record of his docket entry in the matter of the case prosecuted by the City of Elgin hereinbefore referred to. Except for a possible motive to destroy the evidence of his conduct in that cause, there is no ground for suspecting that Crum is guilty of this offense, and when the objection is analyzed no motive is found.

That record, since January 5, 1921, had been in the possession of Guy Patten, city recorder. Section 18 of Article V of the Charter of the City of Elgin makes it the duty of the recorder:

"To keep accurate minutes of all proceedings of the council and a correct record of all judicial business by him transacted. It is his duty also to file every paper presented to him officially, and to take charge of and to safely keep all the papers and records of the corporation."

The recorder testified:

"Q. Now, you have had possession of these books at all times?

"A. Yes, sir.

"Q. Mr. Crum hasn't had possession of these books since you have been in office?

"A. No, sir, they have been up here since yesterday.

"Q. But otherwise they were in your custody and keeping?

"A. Yes, sir."

Direct, by Mr. Ringo:

"Q. Where do you keep the books?

"A. At the bank, the meeting book, I keep them at the bank and the city hall.

"Q. That particular book?

"A. The docket has been in the vault in the city hall.

"Q. That is a vault that is in connection with the office of Mr. Crum?

"A. No, sir, it is across the hall.

"Q That is where he keeps his books?

"A. No, not now.

"Q. He has access to the vault?

"A. No, sir, the combination has been changed.

"Q. Does anyone else know it?

"A. Yes, sir, the mayor, I think. * * "

Recross, by Mr. Green:

"Q. This vault is an ordinary safe, it requires that someone know the combination to open it?

"A. Yes, sir.

"Q. And in addition to that the door to the room was also kept locked?

"A. Yes, sir.

"Q. While this room is in the same building, it is across the hall?

"A. Yes, sir.

"Q. He would have to first unlock the door and then know the combination of the vault?

"A. Yes, sir."

By the examiner:

"Q. Has anybody asked you to have possession of that docket?

"A. No, sir.

"Q. When was it turned over to you?

"A. January 5, 1921."

Different members of the bar of Union County who take great pride in the integrity of their profession have offered themselves as witnesses, and have sustained the applicant's good name. Among them we will cite one illustration: Ed Wright, at one time secretary of the Public Service Commission of Oregon, eleven and one-half years county clerk of Union County, at present the district attorney of his county, and a man who knows the people of Union as few men know them, testified to the upright character of applicant. Not only members of the bar, but other well-known residents of his county, say that he is of good repute. We have considered this testimony in arriving at our conclusion in the matter.

We have read and carefully considered the record in its entirety, the briefs that were filed with the board by the applicant and by the objector, as well as the brief submitted to this court. The dominant characteristic of this hearing is recognized in the great number of charges preferred against the applicant by the objector and the absence of evidentiary facts to establish his averments.

For the reasons herein set forth, it is hereby ordered that the application of Jesse Crum for admission as an attorney be granted.

APPLICATION GRANTED.