Submitted on the record July 7, order of disbarment September 27, 1927.

## STATE EX REL. MULTNOMAH BAR ASSOCIATION *v.* L. H. TARPLEY.

(259 Pac. 783.)

**Attorney and Client—Attorney Obtaining Money from Clients by Fraud, Failing to Remit to Clients, and Converting Money of Clients, Held Guilty of Misconduct Warranting Disbarment (Or. L., §§ 1077, 1080, 1082, 1091).**

1. Attorney *held* guilty of misconduct contrary to Sections 1077, 1080, 1082, 1091, Or. L., warranting permanent disbarment, where he borrowed money from clients upon fraudulent representations as to security and failed to remit money collected for clients, and procured loan to himself upon the representation that it was to an estate, and converted money of client delivered to him to be applied on purchase of property.

**Attorney and Client—Neither Limitations nor Laches Prevent Disbarment Proceedings, but They Should not be Instituted Many Years After Misconduct and Where Delay may Result in Dismissal.**

2. Neither statute of limitations nor laches is a bar to the prosecution of disbarment proceedings, but they should not be instituted for misconduct which occurred many years before, especially where the attorney lived an exemplary life thereafter, and delay may result in dismissal of proceedings.

---

1. Disbarment for failure to account for money of client, see note in 43 A. L. R. 54. See, also, 2 R. C. L. 1095.
2. See 2 R. C. L. 1107.

Attorney and Client—Delay in Instituting Disbarment Proceedings may be Considered in Mitigation of Punishment.

3. Fact that institution of disbarment proceedings was delayed will be considered by the court in mitigation of punishment inflicted.

Attorney and Client—Punishment of Attorney for Improper Conduct is Governed Largely by Particular Facts of Case, and Disbarment will not be Decreed Where Lesser Punishment Suffices.

4. Punishment to be inflicted on attorney for improper conduct must be governed largely by particular facts of case, and rests in the sound discretion of the court and is to be determined by what is required as a penalty to the attorney as a deterrent to others and as an indication to laymen that the courts will maintain the ethics of the profession, and disbarment will not be decreed where any punishment less severe, such as reprimand, suspension or fine, will accomplish the end desired.

---

Attorney and Client, 6 C. J., p. 583, n. 87, p. 584, n. 88, 1, p. 589, n. 53, p. 590, n. 55, 57, p. 581, n. 69, p. 601, n. 86, p. 612, n. 49, 50, 51, 52, 53.

Original proceeding for disbarment.

In Banc.

ORDER OF DISBARMENT.

For plaintiff, *Mr. Will H. Masters.*

For defendant, *Mr. Donald W. Miles.*

PER CURIAM.—1. On November 29, 1926, the Multnomah Bar Association instituted disbarment proceedings against L. H. Tarpley, and on that day an order was made by this court, directing that a copy of the charges be served upon him within five days thereafter, and that, within twenty days from date of service of process, he appear and answer the charges preferred against him. Defendant answered. On February 23, 1927, hearing was had before Honorable ROBERT TUCKER, Judge of the Circuit Court for Multnomah County, upon reference from this court, plaintiff appearing by Will H.

Masters, and the defendant appearing in person and by his attorney, Donald W. Miles. After hearing the testimony of witnesses and the argument of counsel, the court found, in substance, as follows:

That, in December, 1915, one Jules Reboul and Sophie Reboul loaned to the defendant, then their attorney, the sum of $1,500, upon representations made to them by the defendant, and upon which representations they relied, that the property which he was offering them as security for the loan was free from all encumbrances and that the mortgage then executed by him to them upon that property constituted a first mortgage lien thereon; whereas, in truth, the mortgage was a second mortgage, and covered only a part of the real property pointed out to the lenders by defendant as security for the money loaned; that the above misrepresentations were knowingly made by the defendant, with intent to deceive and defraud his clients.

That about ten years ago, one Henry Schorn delivered to the defendant for collection a note and mortgage for $1,500; that the defendant collected the money due on the note over a period of five years, but that he paid to Schorn only portions of the money thus collected, which fact was not discovered by Schorn until the month of April, 1922.

That, on or about May 21, 1918, the defendant, acting as attorney for Schorn, procured from Schorn a loan of $180 for another client, which loan was repaid by the borrower to the defendant, but that the defendant failed and neglected to account therefor and informed Schorn that he had not collected the money; that, in April, 1922, Schorn discovered that the money had been repaid to defendant, whereupon he de-

122 Or.—31

manded that the sum be delivered to him, and the defendant complied.

That, on June 2, 1919, the defendant, while acting as attorney for Schorn, represented to his client that he, defendant, was the guardian of the estate of Charles Sookee et al., and requested that Schorn make a loan to the estate in the sum of $400; that, under such representation, the defendant procured from Schorn a loan in the amount specified, whereas, in truth, the defendant secured the loan for his own use and benefit, and, though payment thereof has been demanded, has never repaid the same.

That, on or about June 18, 1919, Schorn delivered to the defendant, as his attorney, $1,500, to be applied upon the purchase of property, but that the defendant applied thereon only the sum of $1,000, and converted to his own use the remaining $500, thus permitting a mortgage for $500 to remain as a lien against the property.

That, during the month of February, 1926, the defendant, while acting as attorney for Mr. and Mrs. William Smart, collected $120 as rental, and failed and refused to account to his clients therefor.

As conclusions of law, the court found that the acts complained of were committed by the defendant "wilfully and knowingly, and with the intention to mislead the clients above mentioned, and that said defendant has been guilty of conduct involving moral turpitude."

Upon the defendant's admission to the bar, this court, pursuant to the direction of the statute, entered an order in which was embodied the statement that the defendant is of "good moral character." Or. L., § 1080. That section contemplates that the lawyer shall preserve his professional honor inviolate, and

be ever loyal and true to his clients. When he cannot be true to his client, he should terminate the relationship of attorney and client. It is the statutory duty of every attorney to maintain inviolate the confidence of his client: Or. L., § 1082. Likewise, the privilege of practicing law in the courts of the state may be revoked by the court whenever it appears upon a lawful hearing that the attorney has been guilty of the commission of unlawful acts involving moral turpitude. By Section 1077, Or. L., good moral character is made an essential qualification for admission to the bar of this state. Again, note Section 1091, Or. L., which provides, in effect, that an act that will preclude an applicant from admission to the bar will justify his disbarment after he has been admitted. In support of the foregoing principles, see *In re Application of Jesse Crum,* 103 Or. 296 (204 Pac. 948); *State ex rel. Montgomery* v. *Estes,* 105 Or. 173 (209 Pac. 486); *State ex rel.* v. *Goldstein,* 109 Or. 497 (220 Pac. 565).

It appears from the findings returned into court that the professional misconduct charged by the complaint in this case has been proved, and there is no contention that these findings are not supported by the evidence. The defendant has betrayed the confidence of his clients. Moreover, the misconduct charged and proved involves moral turpitude, and, clearly, renders the defendant subject to suspension or disbarment.

2, 3. The only question, then, to be determined is: What shall the judgment be? In reaching a decision, the principle announced in the case of *State ex rel. Montgomery* v. *Parker,* 120 Or. 465 (252 Pac. 711), should be borne in mind. In that case, we quoted

the following excerpt from 2 Thornton on Attorneys at Law, Section 880:

"The statute of limitations does not constitute a bar to the prosecution of disbarment proceedings; nor will such proceedings be barred by mere laches. * * But disbarment proceedings should not be instituted for misconduct which occurred many years before, especially where the respondent has lived an exemplary life thereafter. And the fact that such proceedings have been delayed will be taken into consideration in mitigation of punishment, and may result in a dismissal."

But this prosecution is not predicated upon a single cause of action that has been dimmed by the years and softened by the subsequent exemplary conduct of the defendant. On the other hand, the cause is based upon sundry unlawful transactions on the part of the defendant, ranging in point of time from the month of December, 1915, to the month of February, 1926.

4. Now, what reasoning should govern in determining the punishment which should be meted out to the offender? On the subject of Attorney and Client, the editors of Corpus Juris say, in part:

"In arriving at the punishment which should be imposed, each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession. A removal from the bar should not be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired. It follows that the court may, instead of striking an attorney's name from the rolls, merely suspend him from practice for a specified length of

time, or until the performance of prescribed conditions.''   6 C. J., Attorney and Client, § 93, p. 612.

With the foregoing principle we are in full accord. However, from the facts as found and returned into court by the referee, we believe that substantial justice demands that the defendant herein be permanently disbarred from further practice of the law in the courts of this state.

An order will be entered accordingly.

ORDER OF DISBARMENT.