## In re SULLIVAN.

### (No. 4,169.)

(Submitted April 8, 1920. Decided May 3, 1920.)

[189 Pac. 770.]

*Attorneys — License — Revocation—Lack of Patriotism—Suspension—Referees—Findings—When Conclusive.*

Referees—Findings—When Conclusive.
   1.  Where the evidence in a proceeding looking to the revocation of an attorney's license because of lack of moral qualifications, was conflicting, the referee's findings will be adopted.

Attorneys—Lack of Patriotism—Suspension.
   2.  Suspension of an attorney to whose continuation in office objections were made after admission, upon the ground that he did not possess that high sense of patriotic duty and love of country during the war which is indispensable to the composition of a thoroughly American citizen, for the term of eight months, with leave to apply for reinstatement upon a satisfactory showing of a good moral character, *held* sufficient punishment in view of applicant's youth, inexperience and immaturity of mind.

In the Matter of the application of John F. Sullivan for a license to practice law. Applicant suspended until January 1, 1921, with leave to be then reinstated on showing of good moral character.

*Mr. J. J. McCaffery,* for Applicant, argued the cause orally.

*Mr. C. E. Pew, Amicus Curiae,* argued the cause orally.

### Opinion—PER CURIAM.

In November, 1919, John F. Sullivan made application to take the bar examination. Due notice was given of the application as required by the rules of this court, and, no objections having been made, he was permitted to take the examination, and having passed the same satisfactorily, an order was entered that he be admitted, and a certificate was issued. Almost immediately thereafter objections in writing were lodged with this court, in which objections it was charged that during the recent World War, Sullivan had expressed himself as opposed to the war, and had apparently made every effort to avoid military service. Reference was also made in the objections to the previous attempt by Sullivan to gain admission to the bar in 1916, to the proceedings had upon that application, and to his unsuccessful attempt to secure admission in the state of Utah. The objectors excused themselves for not having presented the objections within the time designated for that purpose, and they were permitted to be filed, and Sullivan was called upon to answer. The answer interposed is a denial of each and every charge which relates to his war record. The matter was submitted to H. G. McIntire, referee appointed to take the testimony and report his findings and recommendations. The referee has found that: (1) In April, 1917, while this country was engaged in war, Sullivan expressed himself as follows: "Any time that my country gets me to fight for it, it has got to force me." (2) That he expressed it as his opinion that the United States had no cause for war, declared that if his friends felt as he did none of them would be found on the battle front, and generally attempted to justify Germany's acts of aggression, regardless of their effect upon this country. (3) That in June of the same year he said that he had not registered for the draft, did not have to register, and was not going to regis-

57 Mont.—38

ter. (4) That in response to an inquiry why he did not volunteer, he said, "Any time they want me they will have to come and get me." (5) That in June, 1918, a person nicknamed "Sleepy" Sullivan stated to one O'Leary, then in the uniform of a soldier, "That is one thing they will never see me in," and the referee finds that the Sleepy Sullivan referred to is this applicant.

Upon the hearing in this court it was earnestly urged that [1] the evidence is insufficient to sustain these findings, or any of them. With respect to the last finding it may be said that the evidence is in such condition as to leave the question of Sleepy Sullivan's identification somewhat in doubt. The evidence throughout is in substantial conflict; but this court was fortunate in securing as referee a man of profound learning and wide experience—a leader of the bar of this state for thirty years—whose findings command the greatest respect. Furthermore, the referee saw the witnesses on the stand, heard them testify and observed their demeanor, and is therefore in a much more advantageous position to judge of their credibility than are the members of this court, who must resort to the printed record alone.

We deem it unnecessary to consider the last finding, but in all other respects the findings of fact made by the referee are approved and adopted. They point unerringly to the conclusion that Sullivan did not possess that high sense of patriotic duty and love of country which inspired our young men generally, and which were by the common consensus of public opinion indispensable to the composition of a thoroughly American citizen.

For his misconduct in deceiving this court in 1916, Sullivan was punished severely, and we think adequately, when all the surrounding circumstances are considered. For his lack of [2] moral fiber sufficient to impel him to seek, rather than avoid, military service, and for his opinion upon the merits of the cause for war, his severest punishment will be righteous contempt of his loyal fellow-citizens. However, we are not

prepared to say that the applicant is so far deficient in moral character that he cannot become a useful member of society and an honorable and useful member of the bar of this state. His youth, inexperience and immaturity of mind offer something in mitigation, if not in excuse, of his conduct.

To the end that the applicant may be given every fair opportunity to acquire a proper sense of appreciation of the duties of good citizenship, we do not close this door of opportunity against him altogether. Instead of undoing what has been done heretofore, the same purpose may be served by this present disposition.

It is ordered that John F. Sullivan be, and he is hereby, suspended from his office as attorney and counselor at law until the first day of January, 1921, when he may be reinstated upon a satisfactory showing that he is a man of good moral character and worthy the respect and confidence of his fellowmen.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.