Argued on report of referee March 5; petition for admission to
bar denied March 19; rehearing denied April 2, 1935

# In re WEINSTEIN

(42 P. (2d) 744)

[1]

*S. J. Bischoff,* of Portland, for applicant.

*Oscar Furuset,* of Portland, for Oregon State Bar Association.

BAILEY, J. Archie Weinstein, hereinafter referred to as the petitioner, in May, 1933, more than 60 days prior to the date fixed by the rules of this court for the annual bar examination to be held that year, filed with this court his application to be permitted to take the examination. The application was in the usual and regular form and was accompanied by the requisite number of affidavits as to length of study and good moral character of the applicant. Based thereon the petitioner was permitted to take the examination held on the second Tuesday of July in that year. In October, following, the state board of bar examiners made its report to this court concerning the result of such examination, and recommended against petitioner's admission, of which fact he was duly apprised.

Thereafter the petitioner applied to this court to require the state board of bar examiners to grant him a hearing at which evidence might be adduced as to his character qualifications, or that in lieu thereof a hearing be held before this court or some referee appointed by it, and that the findings upon such hearing be transmitted to this court for consideration. The application for the reference set forth that petitioner was informed and believed that the recommendation against his admission was not based upon lack of scholastic attainments on his part but upon objections which had been filed concerning his moral character; and that he was "ready, willing and able to establish his good moral character to the satisfaction of this court, or to the satisfaction of the state board

of bar examiners or any referee the court may appoint to take testimony in respect thereto''.

On March 5, 1934, an order was entered here to the effect that "the committee of the Oregon Bar Association and the board of bar examiners have to and including May 15, 1934, in which to serve and file formal written charges against" the petitioner.

Thereafter there was filed an answer to petitioner's application by "state of Oregon on relation of the Oregon Bar Association", which admitted petitioner's taking the examination and his denial of admission, denied all the allegations in petitioner's application as to his good moral character, and charged him with certain specific acts tending to show that he was not of good moral character and ought not to be admitted to practice law. To this answer a reply was filed, putting in issue the charges made against the petitioner in the answer.

The matter was referred to Honorable T. E. J. Duffy, circuit judge for the eighteenth judicial district, to hear testimony and report his findings to this court. Testimony was taken at Burns, Oregon, where petitioner resides, and the hearing consumed several days, after which the referee made his report to this court, accompanied by voluminous findings to the effect that some of the charges made were sustained by the evidence, while others were not. The recommendation of the referee was that petitioner be not admitted.

The petitioner filed exceptions to the referee's report and the matter was presented to this court by oral argument supported by briefs of the petitioner and the relator.

Archie Weinstein was 30 years of age at the time he presented himself for admission in 1933. He was a graduate of one of the high schools of Portland,

Oregon, and had attended the University of Oregon for two terms.

In the summer of 1920 he entered his father's mercantile business at Lawen in Harney county. The father then had a small general store, and as his business expanded two other stores were established by him, one at Crane, Oregon, and the other at Burns. The business was conducted under the name of Weinstein Mercantile Company, a corporation. Stock of this corporation was owned entirely by the father, with the exception of qualifying shares. From 1925 until 1929, when the corporation became bankrupt, Archie Weinstein was secretary of the corporation and active in its management.

Prior to the bankruptcy, which occurred in July, 1929, he had made some study of law with relation to contracts and the statute of frauds. Upon the corporation's ceasing business he took up the study of law with the intention of entering the profession. At the same time he established a collection and credit reporting agency and has ever since been engaged in that business. In conducting his collection agency he has acted as attorney in many proceedings instituted in justice's court. He has also been personally involved as a litigant in a number of cases tried in the circuit court, not in connection with his collection business.

Section 32-104, Oregon Code 1930, provides: "An applicant for admission as attorney must apply to the supreme court, and must show: . . . (2) that he is a person of good moral character, which may be proved by any evidence satisfactory to the court; . . ." Rule 38 of this court, which was in effect at the time the petitioner made his application and took the examination for admission, provided that "the examination of all applicants for admission to practice

in this state shall be conducted by a board of examiners under direction of the supreme court, which board shall be composed of nine members of the Oregon bar in good standing'': 137 Or. 683, Rule 38 as amended by order of April 11, 1933.

By Rule 39 the application is required to be accompanied by three affidavits, which, in addition to showing that the applicant has complied with certain educational requisites, must show that he is a ''person of good moral character'': 137 Or. 684. This rule was amended April 11, 1933, by the addition of the following paragraph:

''Unless the court shall otherwise direct, all applications, certificates, affidavits, and petitions mentioned in this rule shall be referred to the board of examiners which shall investigate and report to the court its findings as to the facts and its recommendations with respect to whether such applicant should be permitted to take the examination. The information obtained by the board in such investigations with respect to any applicant may be taken into consideration by the board in passing on the qualifications of such applicant for admission to the bar.''

Prior to the amendments of April 11, 1933, the board of bar examiners consisted of five members, and the number was then increased to nine, in order to provide enough members to form a subcommittee to investigate and report upon the moral fitness of candidates for admission to the bar. Until the rules were amended on May 22, 1934, the procedure to be followed in case of adverse recommendation by the board, based upon the applicant's moral character, was not outlined by the rules of this court.

We are not here concerned with the disbarment of an attorney who has been duly and regularly admitted to practice law, but with the qualifications of

an applicant who has presented himself as being both mentally and morally fit for admission. The hearing before the referee was conducted on the theory that the petitioner had fully met the educational requirements and that the only question involved was as to his character.

■ ''The right to engage in the practice of the law is a privilege conferred or withheld, in accordance with the general policy of the state expressed by statutory enactment'': *Re Application of Jesse Crum,* 103 Or. 296 (204 P. 948). Further, as said in 6 C. J., p. 569, § 11, ''the right to practice law is not a natural or constitutional right, but is a privilege or franchise subject to the control of the legislature, and limited to persons of good moral character with special qualifications ascertained and certified as prescribed by law''.

In his application to this court after the adverse report of the board of bar examiners the petitioner requested a hearing and asserted that he was ''ready, willing and able to establish his good moral character to the satisfaction of this court''. He has been granted that hearing. His exceptions to the referee's findings are to a large extent based on the insufficiency of the specifications in the answer filed on behalf of the bar association to support the referee's report. And on the same ground objections were made during the hearing, by counsel representing the petitioner, to the introduction of testimony, and many exceptions were taken to the admission thereof by the referee. The petitioner, however, was advised that if he had been taken by surprise by the admission of testimony on any subject not specifically covered by the answer, he would be given ample opportunity to procure evidence to meet such testimony. He did not avail himself of this privilege of obtaining a continuance of the hearing, and is

now attempting to overthrow the referee's findings by contending principally that the testimony was inadmissible under the allegations of the answer and by further contending that the burden of proof was on the relator to prove by more than a preponderance of the evidence the charges contained in the answer.

In the case of *Spears v. State Bar,* 211 Cal. 183 (294 P. 697, 72 A. L. R. 923), the court quoted with approval from an earlier California case as follows:

" 'It is contended on behalf of the applicant that upon an attorney's application for admission the court can not reject him for want of good moral character, unless it appears that he had been guilty of acts which would be cause for his disbarment or suspension. We think this proposition can not be sustained. On his admission on certificate he must produce "satisfactory evidence of good moral character." *The burden is on him to do this.* In a proceeding to disbar an attorney the burden is on the accuser to prove moral turpitude. The requirement on his admission is to prevent the accrediting of untrustworthy persons as fit to receive the confidence attending upon the relation of attorney and client. The inquiry may extend to his general character as well as to particular acts. *It is broader in its scope than that in a disbarment proceeding.* The court may receive any evidence which tends to show his character for honesty, integrity, and general morality, and may no doubt refuse admission upon proofs that might not establish his guilt of any of the acts declared to be causes for disbarment.' [Italics ours.]"

In the case of *Rosencranz v. Tidrington,* 193 Ind. 472 (141 N. E. 58, 28 A. L. R. 1136), the court, in referring to the admission of an applicant to practice, observed:

"One of the necessary qualifications to entitle a person to admission to the bar is that he be of good moral character. Ind. Const., Art. 7, § 21; Burns's Anno. Stat. 1914, §§ 181, 997; Rev. Stat. 1881, §§ 181,

962. By asking such admission, appellee put his own good moral character directly in issue, and assumed the burden of proof as to that issue. Ex parte Walls, 73 Ind. 95, 107-109.

"An application for admission to the bar may be made a mere oral motion, and may be sustained or opposed by evidence, without any written pleadings. Even in a civil action, where formal pleadings are required, any evidence tending to disprove a fact which the plaintiff has the burden of proving may be introduced without being pleaded specially. And the mere fact that no answer has been filed charging appellee with having done the specific acts sought to be proved was not a sufficient cause for excluding the offered evidence, if it was otherwise competent. Ibid. What remedy a party might have in case of surprise at the introduction of evidence which he might hope to refute if given time to produce his witnesses is a question not before us. But it would be something else than the exclusion of pertinent evidence against him. * * *

"The courts have many times decided that where the good moral character of a person is directly in issue, as where plaintiff's right to recover depends on the existence of such good moral character, without which there can be no recovery, evidence of specific acts is competent to defeat the action."

The court then mentioned numerous instances, supported by authorities, in which the burden was upon the moving party to prove his good moral character.

■ By permitting Archie Weinstein, petitioner herein, to take the examination in 1933, based upon his formal showing as to qualifications, the burden of proving the subsequent issue as to his good moral character was not shifted from the applicant to the relator. The amendment to Rule 39 on April 11, 1933, above mentioned, contemplated that the members of the board of bar examiners would make such investigations as deemed necessary, after, as well as before, the examination on legal subjects, and the facts disclosed by such

investigations would be taken into consideration by the board in its report to this court. As the applicant here was denied admission and now seeks to overcome the report of the board of bar examiners, the burden of proof is on him to show that he is a man of good moral character.

■ The petitioner attempted by numerous witnesses to prove that his general reputation was good in the community of his residence. Some of the witnesses produced by him frankly admitted that there was a diversity of opinion on this question in Harney county. Character and reputation are distinct. Reputation is the opinion generally entertained of a man, while character is what he really is. The preponderance of evidence produced by the petitioner as to general reputation—and little was offered by the relator on that subject except that which was brought out on cross-examination—tended strongly to prove that he was a man of good reputation. The evidence which was produced by the relator as to specific instances of moral defection went to show the character of the applicant and tended to prove that it was not of that high type believed to be essential in a member of the bar.

■ It would be of no interest to the public and would not help the petitioner, who is a young man with a future that could be turned to good account both for himself and the community, to set out the acts of petitioner which impelled the referee to report adversely on his hearing. By a careful reading of all the testimony in the case and the briefs of both the petitioner and the relator, we are convinced that the referee's findings adverse to the petitioner, discussed by him under the three following headings, to wit: (1) specification (g) and general allegations in paragraph III of relator's answer; (2) specification (e) of re-

lator's answer; and (3) the Bates-Ingram cases, are fully sustained by the evidence. The findings of the referee are on file here, and this obviates the necessity of a recital of the facts upon which the findings are based.

Upon the recommendation of the board of bar examiners, substantiated by the findings of the referee and our own independent study of the record, we hold that the petitioner, Archie Weinstein, has failed to meet the requirements of this court as to qualifications for admission to practice law in this state.