Submitted on briefs November 26; applicant admitted to the Bar December 31, 1935; rehearing denied February 25, 1936

## STATE ex rel. BOARD OF BAR EXAMINERS
### v. POYNTZ
#### (52 P. (2d) 1141, 54 P. (2d) 1212)

*Will H. Masters,* of Portland, for plaintiff.

*J. P. Kavanaugh* and *B. G. Skulason,* both of Portland, for defendant.

BELT, J. The defendant, L. K. Poyntz, who for the past 12 years has practiced his profession as a physician and surgeon in the city of Portland, made application in May, 1934, to the supreme court for admission to the bar. His application was accompanied by the affidavits of two lawyers of high repute and A. R. Hunter, to the effect that the applicant was a person of good moral character. Mr. Hunter is a member of the State Industrial Accident Commission and, without doubt, has had numerous occasions to consider the testimony of Dr. Poyntz, the petitioner herein—a well-known expert witness in personal injury actions who generally testifies on behalf of the plaintiff.

No objections having been interposed to this prima facie showing of the moral qualifications of Dr. Poyntz to be admitted to the bar, the applicant paid the required fee and proceeded to take the examination conducted by the State Board of Bar Examiners. Upon completion of the examination—which, it is conceded, the petitioner succeeded in passing—the State Board of Bar Examiners failed and refused to recommend to this court that Dr. Poyntz be admitted for the reason that his moral character was not good. No hearing was had, however, by the State Board of Bar Examiners and the petitioner had no opportunity to meet his accusers face to face to refute any charges which might be made against him, although he urged the board to grant him such hearing. In fairness to the board, let it be said that no statutory procedure for such hearing was provided. The conclusion reached by the board was based upon private and confidential investigation conducted by various of its members.

Dr. Poyntz then filed his petition with the supreme court for admission to the bar. Thereupon the board

of bar examiners filed a complaint against the petitioner alleging in substance:

(1) That the petitioner is a member of the medical profession specializing in X-ray diagnosis and that his reputation among the members of his profession—particularly among those specializing in such work—is not good;

(2) That it is the general opinion of the members of the medical profession that petitioner will not give an "honest opinion in his X-ray findings and will make a willful, deceitful finding if he deems it necessary" when testifying in personal injury actions;

(3) That petitioner aided and abetted one Dr. Richard Neubauer in the violation of the law relative to the sale of narcotics by making a knowingly false diagnosis of the ailments of various persons sent to him by Dr. Neubauer in order to afford the latter a basis for the sale of narcotics to them;

(4) That petitioner "embarked upon a career as a professional witness in personal injury cases" and that his findings and testimony in most cases are willfully false and "diametrically opposed to the findings and testimony of the experts for the defendant".

The petitioner in his answer denied generally the charges made against him by the state board. Upon issue being joined, the supreme court referred the cause for the purpose of having testimony taken. The voluminous record is now before us for consideration. There are over 1,200 pages in the transcript of the evidence and the exhibits are, indeed, numerous. Apparently no attention was paid to rules of evidence. Almost everything went in and the petitioner's record, in and out of his profession, was covered with a fine-toothed comb. It was a vigorous and fearless prosecution.

There is no question about the ability of the petitioner in his profession. That matter is conceded. Neither is it contended that Dr. Poyntz has not sufficient knowledge of the law. He graduated cum laude from the Northwestern College of Law. The sole question is whether he has shown sufficient moral qualifications to entitle him to admission to the honorable profession of the law.

■ Section 32-104, Oregon Code 1930, provides:

"An applicant for admission as attorney must apply to the supreme court, and must show,

&ast; &ast; &ast; &ast; &ast;

2. That he is a person of good moral character, which may be proved by any evidence satisfactory to the court;

&ast; &ast; &ast; &ast; &ast;"

In view of the above section it is clear that the burden of proof relative to such showing rests upon the applicant: *In re Weinstein*, 150 Or. 1 (42 P. (2d) 744). We are not dealing with a disbarment proceeding where the burden of proof is upon the accuser. However, when the applicant has made a prima facie showing, as provided by rule 39 of the supreme court,—which was done in the instant case—and has paid the fee and taken the examination, it is incumbent upon those making objections to offer evidence to support the same and to overcome the prima facie showing made by the applicant. It is not for the applicant to prove the falsity of the charges made against him. The burden of proof never shifts but the burden of proceeding does.

The rules of the supreme court applicable to admission to the bar, as amended and adopted May 22, 1934, which are material herein provide:

"Rule 39. Each application for admission to the bar by examination shall be filed with the clerk of the

supreme court not *less than 60 days during 1934* and thereafter not less than 90 days prior to the date of the examination unless the court shall by order, upon petition for sufficient cause shown, otherwise specify the time for filing such application.

Each application for admission by examination shall contain or be accompanied by the following:

\* \* \* \* \*

(3) the affidavits of three responsible citizens, two of whom shall be members of the bar, showing that the applicant is a person of good moral character, which affidavits shall set forth how long a time, when and under what circumstances those making the same have known the applicant;

\* \* \* \* \*'' [Italics ours.]

"Rule 41. Unless the court shall otherwise direct, all applications, certificates, affidavits and petitions mentioned in Rules 39 and 40 shall be referred to the board of bar examiners which shall investigate and report to the court its findings as to the facts and its recommendations *with respect to whether such applicant should be permitted to take the examination.*

\* \* \* \* \*'' [Italics ours.]

"Rule 43. \* \* \* \* \*

"If after the filing of any such petition (reviewing the finding of the board as to examination) the board shall request or the court deem it necessary to inquire into such applicant's moral character or general fitness, the court may appoint a referee to take testimony with respect thereto and report his findings and recommendations to the court. \* \* \*.''

■ We believe the above rules contemplate that if there are any known objections to the applicant's character the same should, as a matter of fairness, be made before the taking of the examination. It will be borne in mind that the board has 60 days within which to "investigate and report to the court its findings as to the facts

and its recommendations with respect to whether such applicant should be permitted to take the examination''. We do not imply that if no objections are thus made the board is precluded, in all events, from making objections to the character of the applicant, as rule 43 provides that inquiry may be made as to an applicant's moral character even after the filing of a petition to review the findings of the board relative to examinations. We do hold, however, that when an applicant is permitted to take the examination on the express or implied recommendation of the board he is entitled to rely upon the presumption of good character and the prima facie showing made in accordance with the rules of this court.

The above rules relative to the time of making objections to an applicant's character were adopted since the adoption of those under consideration in *Re Weinstein,* supra, and what was said there concerning such objections must be read in the light of the then existing rules.

■ We believe it would serve no good purpose to review in detail the evidence in this voluminous record. It would require many pages of the reports to do so. We shall be content merely to state our conclusions. There is no evidence tending to show that Dr. Poyntz had any knowledge of the unlawful sale of narcotics by Dr. Neubauer or that he ever aided or abetted him in such pernicious practice. None of the reports made by Dr. Poyntz relative to patients sent to him by Dr. Neubauer could reasonably be interpreted as affording a basis for the sale of narcotics. This charge against the petitioner is wholly unfounded. Dr. Poyntz was naturalized as a citizen on May 22, 1934. If he were involved in such unlawful practice it is reasonable to assume that the United States government would have been ap-

prised of such matter and would have interposed objections to his admission.

It is true that petitioner has appeared in a large number of personal injury actions as a witness for the plaintiff. It may be that he, like many other expert medical witnesses, unconsciously became a sort of champion for the party calling him. The same might be said about some of the doctors who usually appear as a witness for the defense in personal injury actions. Some expert medical witnesses are inclined to exaggerate injury and others are equally inclined to minimize it. The great majority of doctors, however, are independent in their judgment and have a high sense of professional ethics. The mere fact that petitioner is an effective expert witness—since he talks in language that a juror can understand and has often appeared in personal injury actions—does not indicate that he is a man without character. The pertinent inquiry is whether he has so testified in such actions as to indicate that he is not intellectually honest.

Character is what a man is, and sometimes it does not square with what people think he is. Much of the adverse criticism against Dr. Poyntz has arisen by reason of his activity as a witness in personal injury actions. We have carefully examined his testimony in the cases mentioned by relator and are not prepared to say that it reflects a bad character. Medicine, like the law, is not an exact science. The fact that the petitioner has given testimony relative to some technical subject, at variance with most expert witnesses, does not spell dishonesty.

Let us consider briefly the Farrar case upon which relator strongly relies. In that case Dr. Poyntz testified that a certain radiograph taken 15 months after injury showed a fracture of the transverse processes of

the first lumbar vertebra. Expert witnesses called by the defense testified that there was no fracture but interpreted the shadows in question as merely showing rudimentary ribs. Assuming that Dr. Poyntz was wrong in his interpretation of the radiograph, some authorities on radiology hold that it is often difficult to differentiate between a fracture of the transverse processes of the vertebrae and rudimentary ribs. Dr. Poyntz referred some literature on the subject to Dr. Otis F. Akin—a physician and surgeon of unquestioned integrity and ability—and the latter, under date of January 26, 1934, wrote a letter to the petitioner saying:

"I read them over several times carefully and freely concede there is much more to the subject than I had thought, and that we all may make mistakes in interpretation of shadows as yet incompletely studied and classified.

"Thanking you very much for the privilege of looking over these abstracts, and assuring you that I have not laid any implications at your door, I am, with best wishes,   *   *   *."

The difference of opinion in the Farrar case certainly does not justify this court in holding that Dr. Poyntz is a man of bad character. Neither do we think that his testimony in any other case shows mental dishonesty.

Dr. Poyntz has been a member of the medical profession for many years. Can it be that he has sufficient moral character to remain in that learned and noble profession and yet is so lacking in moral character as to be unworthy of admission to the bar? To say the least, it is an anomalous situation.

Without further review of the evidence we are convinced that the evidence offered by the relator fails to overcome the prima facie showing of good character

made by the petitioner. We know not what information the board had relative to the applicant's character. We base our conclusion only on the record.

It follows that petitioner is admitted to the practice of the law in this state, and that a license so to do will be duly issued.

CAMPBELL, C. J., did not participate in this decision.

---

Petition for rehearing denied February 25, 1936

On Petition for Rehearing
(54 P. (2d) 1212)

BELT, J. In deference to the State Board of Bar Examiners, we have again examined the record in this case notwithstanding the careful attention it received on original hearing. In our opinion, the evidence does not justify a conclusion that Dr. Poyntz is lacking in good moral character.

We are not unmindful of the services rendered by the board to the court, the profession, and the public— all without remuneration. This court ever stands ready to cooperate with the board in maintaining a high standard in the legal profession. It, as well as the board, appreciates the importance of a clean bar. We have been reluctant to disagree with the board but, since under the statute the final decision rests with this court, there must be no evasion of responsibility.

The petition for rehearing is denied.

CAMPBELL, C. J., took no part in this decision.