In the Matter of the Application of HAROLD F. GREENBLATT for Admission to the Bar of the State of New York.

Second Department, March 4, 1938.

HAGARTY, J. The applicant passed the bar examination, as is evidenced by the certificate of the State Board of Law Examiners bearing date the 28th day of October, 1932. Subsequently, and on May 26, 1933, he made application for admission to the bar by filing his sworn statement, hereinafter referred to as a questionnaire, as required by rule 1 of the Rules of Civil Practice, together with other necessary information and credentials, with the committee on character and fitness. The application was disapproved by the committee on the 2d day of November, 1933. The ground of disapproval appears in the indorsement on the application, reading as follows: "Application for approval of Committee on Character and Fitness denied, on ground that applicant attempted to and did deceive the Committee as to disciplinary action by the University of Maryland."

A rehearing of that application was granted by the committee on the 28th of January, 1937. Upon the rehearing a new question-

naire, together with other papers, including additional character affidavits, was filed with the committee, and the applicant submitted himself for examination. The committee then approved the application and forwarded the entire record to this court with its recommendation.

The applicant's difficulties originated in a false statement made by him in his first questionnaire, followed by deliberate attempts, not only to deceive the committee, himself, as to certain irregularities while he was a student at the University of Maryland, but to enlist the aid of that university in such deception. It was for that reason that the application was originally denied in 1933. Upon this reapplication we find no evidence of repentance, but, to the contrary, the effort to deceive was continued, not only in the new papers filed, but in the oral examination before the committee and almost to the close of the hearing, when the truth was admitted.

In answer to question 5 of the first questionnaire, the applicant stated that he attended the University of Maryland from September of 1924 to March of 1926, but " Did not receive a degree as I dropped from the school when I decided to study law and I had already obtained sufficient credits." In response to question 7, which is, " Have you been dropped, suspended or expelled from any institution of learning?" the applicant answered " No." But the certificate required by the committee on character and fitness from the University of Maryland, to the effect that the applicant had attended that institution from the 22d of September, 1924, to the 2d of March, 1926, and that no degree had been conferred, contained the following:

" If no degree conferred, give reason. Dropped for conduct.

" Conduct — whether anything discreditable from standpoint of character. Dropped for irregularity in examination.

" Was applicant charged with, or disciplined, suspended, or dropped for, any misconduct? If so, state facts. Dropped for irregularity in examination."

In returning the form to the committee, the registrar of the University of Maryland wrote: " Enclosed I am sending in a form which Mr. Harold F. Greenblatt has requested I fill out for him. I believe that you should have a copy of the letter which he wrote, requesting how the blank should be filled out. This is being sent to you." The letter to which the registrar refers as having been written by the applicant is addressed to the University of Maryland, bears date the 15th day of April, 1932, and reads as follows:

" I entered your University in Sept. of 1924 and was a student there until I left in March of 1926.

"When I received my Law Qualifying Certificate from you in 1926 I noticed that the word 'dropped' appeared as the reason for my not finishing the 2nd semester of 1925–1926 school year. The question was at that time raised as to its meaning and I was caused quite a bit of difficulty. It would be of great convenience to me if 'dropped' read 'Student left' or words meaning that I left your school or words to that effect.

"Under 'If no degree conferred, give reason' the answer is 'Did not finish course.' Next question should be answered in the negative — that is NO. The question 'Was applicant' etc., should be answered thusly — NO.

"I hope that the above information will be helpful in your filling out the certificate. I am indeed sorry that I must cause you this extra work — knowing fully how busey (*sic*) you are but it is unavoidably (*sic*).

"Will you please address answer to me at 154 Taylor Street, Brooklyn, New York."

So it would appear that the applicant asked the university to give as the reason why no degree was conferred upon him that the "Student left," and to answer in the negative the questions as to whether there was anything discreditable from the viewpoint of character, or whether the applicant was charged with, or disciplined, suspended or dropped for any misconduct.

The irregularities with which the applicant was charged by the Honor Court of the University are contained in a letter bearing date the 23d of February, 1926, from the dean of the university to Dr. A. F. Woods, the president. I shall not reproduce that letter, a copy of which was sent to the committee by the university, and which contains facts that would justify the university in concluding that the applicant was guilty of irregularities in the examination. This was the conclusion: "Mr. Greenblatt's record for last semester was very poor. He failed in Physics and Physical Education — six hours, was conditioned in French and made D's in two other subjects, in addition to this irregularity in Social Science. In view of his scholastic record this year, his indirection in the course in Social Science, and his conduct and personal characteristics I could not now nor at any future time conscientiously recommend him to our Medical School nor to the medical profession. I have talked his case over also with Professor Broughton, and he also recommends that Mr. Greenblatt be dropped from the University at this time."

Upon this reapplication, by petition verified the 21st day of December, 1936, the applicant avers that after the examination at the end of the first semester of the second year, he was called

upon by Dean Lee to explain the similarity in the answers in his examination paper to those of a fellow student; that " Your petitioner told the Dean that the only explanation he could offer why petitioner and his fellow student seemed to have fallen into the same error as to the misspelling of the name Sumner, and for the alleged apparent similarity of answers, was that petitioner and his fellow student had studied together and had prepared for that examination together." Subsequently, feeling that his " reputation and honor were impugned and petitioner so expressed himself to the Dean," he asked what conclusion the dean had come to in the matter. Thereupon Dr. Lee " requested that your petitioner discontinue his studies at the University since petitioner had sufficient credits to enter a law school." Thereupon he signed a withdrawal slip, which was approved by the authorities.

In dealing with the letter which he wrote to the university, suggesting the manner in which the questions involving the circumstances under which he left the university were to be answered, he refers to it as a " frank, open and written request he made of the University of Maryland to make the record of his withdrawal clear and not ambiguous " and as inconsistent with " an alleged evil design on his part to suggest the suppression or alteration of a record fact."

All of these allegations in the petition filed on this reapplication are intended to bear the inference that the circumstance of similarity and misspelling of the same words was strongly against him, but that in fact there had been no irregularities in the examination. This conclusion is justified by similar testimony given before the committee, represented by Messrs. Lewis and Wysong, on the 24th of November, 1937, when the direct question was put to him, " Well, had you cheated in the examination?" to which he answered " From a factual situation, yes." Then by Mr. Lewis, " Q. What do you mean by that? A. The papers were similar; I even misspelled the same words he did." Finally the direct question was put to him as to whether or not " you copied those answers from the other student," to which he answered, " Yes, I did," admitting then that he denied that to Dean Lee. On this examination, too, he varied his conception of his letter to the university, suggesting answers to the questions, as " ill-advised and inarticulate." He finally admitted that he did not want the question of irregularities " rehashed." He admitted receiving from Dean Lee a letter stating that he was an unfit person to become a member of the medical profession.

Upon the facts disclosed by this record, it is apparent that this applicant does not meet the high moral standards required for

admission to the bar. Throughout this proceeding, not only on the original application, but on this reapplication, he has not only attempted to deceive the committee by false statements, but to involve the University of Maryland in misstatements of fact that would redound to his credit.

The application for admission to the bar should be denied.

Present — HAGARTY, CARSWELL, DAVIS, JOHNSTON and ADEL, JJ.

Application for admission to the bar denied.