81 So.2d 650 (1955)
Robert C.G. COLEMAN, Petitioner,
v.
Olin E. WATTS, Clarence A. Brown, Bert H. Lane, A. Mack Wing, Weldon G. Starry, Sam T. Dell, Jr., Nathaniel J. Klein, Charles H. Scott, as and constituting the State Board of Law Examiners of the State of Florida, and Guyte P. McCord, as Secretary of the said State Board of Law Examiners of the State of Florida, Respondents.
Supreme Court of Florida. Special Division B.
May 11, 1955.
Rehearing Denied June 3, 1955.
J. Ben Watkins of Truett & Watkins, Tallahassee, for petitioner.
*651 Richard W. Ervin, Atty. Gen., and Ralph M. McLane, Asst. Atty. Gen., for respondents.
SEBRING, Justice.
The petitioner, Robert C.G. Coleman, is an attorney duly admitted to practice in the courts of Ohio. In October, 1953, Coleman filed his sworn application with the Florida Board of Law Examiners for permission to take the bar examination preliminary to admission to the bar of this state. In the course of its usual investigation upon such applications, the Board presumably developed certain information concerning petitioner's moral fitness, which was derogatory in nature, and Coleman was requested to appear before the Board on March 12, 1954, for interrogation. At that time, and upon a later occasion, questions were propounded to Coleman by Board members on a wide variety of subjects, including the amounts and sources of his income for past years, and taxes paid thereon; his net worth; his past employments; his business transactions and his associates during his residence in Naples, Florida, since 1946; his personal relationship with his employer's wife at that time, and the purported receipt of a gift of a house by deed executed by the wife containing restrictions on disposition at her option. Inquiries were also made as to whether or not the petitioner had ever engaged in "kickback" business transactions in connection with his work in real estate development at Naples, and whether or not he had served illegitimately as a "tax front" for certain business associates.
The questions directed to the petitioner at the hearings were very general in nature; all derogatory allusions or accusations were flatly denied by petitioner; and the Board members did not at any time specify, either generally or specifically, what acts of malfeasance, if any, had been reported to it of which the petitioner might be guilty. Thereafter, the petitioner was informed by the Board that his application to take the examination had been denied because "he did not meet the requirements for admission to the Florida Bar," but that he might avail himself of the privilege of a rehearing by producing before the Board, within a sixty-day period, "new and additional matter which had not previously been considered."
The petitioner thereupon instituted the present certiorari proceeding to secure a review of the ruling of the Board; alleging in his petition, in respect to the hearings held before the Board, that he had answered "completely, truthfully and in detail the questions and interrogatories directed to him by the various members of the Board," that he was "not at that time or any time previous or subsequent thereto confronted with any derogatory information, charges, complaints or grievances which such Board may hold against him * * * [or] confronted with any witnesses, accusers or complainants or in any manner, shape or fashion apprised or informed of any derogatory information, charges or complaints which might be known to such Board;" that although the petitioner had requested of the Board that he be advised "of any charges or derogatory information that had been developed against him * * * [and] of the names of those persons who had supplied derogatory information or the nature of the information and charges in order that [he] might refute such charges if not true in fact or give to the Board an explanation and reason for such charges, if any did in fact exist," the Board had refused to give such information and consequently it had been impossible for the petitioner to produce at the rehearing "new and additional matter which [had] not been previously considered" by the Board.
Upon the allegations of the petition, which have been set forth here only in substance, the petitioner charged that the Board, in denying him the right to take the examination without at least informing him of the general nature of the complaints and charges and allowing him an opportunity to refute them, "did not proceed according to the essential requirements of the law, exceeded and acted without jurisdiction or authority in the premises, illegally and unlawfully *652 took away [from] and denied to * * * petitioner a right granted to other members of the class of which petitioner is a member and denied petitioner the due process of law."
In opposition to these charges the Board asserts that the right to reject or deny the application of the petitioner upon undisclosed information procured by private investigations or other secret means rested in its absolute discretion, under the controlling law, and that as against the undisclosed information in its possession the petitioner had failed, in the opinion of the Board, to sustain the affirmative burden of satisfying the Board of his moral fitness to be admitted to practice law in the courts of the state.
The admission of attorneys to practice law in this state is regulated by Chapter 454, Florida Statutes, F.S.A. In respect to attorneys other than those qualifying under the diploma privilege, section 454.07 provides only that "All applications for admission to practice shall be filed with the secretary of the board * * *. The board having investigated and satisfied themselves of the moral character and standing of the applicants, shall determine their further qualifications by a thorough examination of them as to their legal knowledge * * *. The board may prescribe the form of application and prepare the questions for the examinations, and fix the form of certificate of admission. The board is hereby empowered to make and adopt all rules, regulations and forms necessary and convenient for the performance of its duties in carrying out this chapter."
So far as we can ascertain, the Board has promulgated no rules governing the procedure to be followed for determining the moral fitness of applicants for admission to practice law, other than to provide that "It is of the utmost importance that the applicant satisfy the Board of his or her moral standing. * * * The Board reserves the right to make additional inquiry * * * either of the references given or of others. * * * each applicant shall supply the Board * * * with all possible assistance or information concerning the moral character, standing * * * and * * * shall appear before the State Board * * * when and as often as required. * * * Any applicant who has been denied admission to the examination may file a Petition for Reconsideration to be presented at the next regular meeting of this Board, provided this Petition contains new and additional matter which this Board has not previously considered, and only if this Petition is filed in the Board's Office not later than 60 days from the date of denial." Rules 2 and 18, Rules Governing Admission to the Florida Bar, and Foreword, paragraph 7. And while, both by virtue of its inherent judicial power and by express authority of the statutes, section 454.031, Florida Statutes, F.S.A., this court may prescribe "standards to be met and procedures to be followed" by applicants for admission to practice, it has not heretofore made any determination as to what procedures should properly be followed by the Board in carrying out its duties with respect to character investigation.
The prime question for decision, under these circumstances, is whether or not the ruling of the Board accorded with the essential requirements of the law and afforded due process to the petitioner when, as appears from the petition, the petitioner was never informed of the nature of the charges or complaints against him, was not confronted with the witnesses or complainants, and, because of the lack of such information, was deprived of the fair opportunity to refute any of the charges or complaints upon which the Board apparently based its decision or to include in his petition for reconsideration "new and additional matter * * * not previously considered" by the Board in respect to such charges.
It seems to us that under the facts stated the petitioner is entitled to some measure of relief within the scope of the prayer of his petition. For as we understand the holdings of the vast majority of the decisions on the point, an administrative body, no matter how broad its discretion, *653 must show, when its orders are properly challenged in the courts, that its conclusions are based upon record evidence and do not rest solely upon confidential information of which the applicant is not apprised and as to which the administrative body gives such credence as to permit it to override a complete denial of derogatory implications by an applicant when he is questioned. See annotations 28 A.L.R. 1140; 72 A.L.R. 929.
In the case of In re Weinstein, 150 Or. 1, 42 P.2d 744, 745, for example, the applicant was faced with statutes and rules for admission to practice very similar in their nature to those in effect in Florida. The Board of Bar Examiners was authorized to conduct independent character investigations under statutes and rules which provided that "`The information obtained by the board in such investigations with respect to any applicant may be taken into consideration by the board in passing on the qualifications of such applicant for admission to the bar.'" In Oregon, at that time, just as in Florida at the present time, the controlling statutes and rules failed to outline the procedure to be followed in case of an adverse recommendation by the Board. Upon being denied a certificate by the Board, the applicant petitioned the court for a ruling as to the nature of the hearing which he should be accorded before the Board or the court. An order was entered requiring the Board to serve formal written charges against the petitioner, and a record of all evidence produced at the hearing was subsequently reviewed by the court. While the Board's ruling was ultimately upheld by the court, the case serves admirably to illustrate the rights of an applicant in a situation precisely like that under consideration in the case at bar.
In that same jurisdiction it was recognized at an early date, even in the absence of any specific statute or rule providing for notice and hearing upon the issue of moral fitness for admission to the bar, that such hearings should properly be conducted along the general lines followed in disbarment proceedings, and the court rejected an adverse recommendation of the Board upon review of the record evidence when it found that "the dominant characteristic of this hearing is recognized in the great number of charges preferred against the applicant * * * and the absence of evidentiary facts to establish [the] averments." In re Crum, 103 Or. 296, 204 P. 948, 952. See also In re Weinstein, supra.
To the same effect is the case of In re Stepsay, 15 Cal.2d 71, 98 P.2d 489, in which the Supreme Court of California set aside a resolution of the committee of bar examiners denying an attorney's application on the ground that he "`failed to meet the burden of showing that he is possessed of the requisite good moral character and of removing reasonable doubt as to his moral fitness'". At the hearing before the committee the petitioner had been the only witness. While recognizing that "the inquiry as to the moral character of an attorney in a proceeding for his admission to practice is broader in scope than in a disbarment proceeding * * * and the court may properly refuse to admit an applicant to practice law upon proof which would not justify an order of disbarment", the California court carefully reviewed the record made of the committee's interrogation of the applicant and found that nothing was developed by the evidence before the committee which would justify the petitioner's rejection. And, pointing out the fact that the applicant had apparently answered truthfully all questions on his application, and had fully disclosed all information specifically requested of him at the hearing, the court found that the committee's ruling was not sustained by the evidence in the record and should accordingly be overruled. Accord In re Garland, 219 Cal. 661, 28 P.2d 354.
In another California case there is stated the salutary principle that where "the committee of bar examiners was expressly created by statutory enactment for the definite purpose of relieving the court of the onerous duty of examining applicants for admission and investigating their fitness * * * this court, recognizing this fact, will refuse to exercise its power in contravention to the adverse recommendation *654 of the committee * * * unless a convincing showing is made by the applicant to the court that such adverse recommendation is not based upon sound premises and valid reasoning." Spears v. State Bar of California, 211 Cal. 183, 294 P. 697, 700, 72 A.L.R. 923. But in this decision, and in others on the same general point, the California court clearly recognized the applicant's right to a judicial review of the evidence bearing on his fitness, and the consequent necessity for a notice and hearing on the specific facts relied upon by the bar committee so as to make a record which would contain evidence in support of their ruling, whether by applicant's testimony alone or otherwise.
In a number of other cases which have come to our attention reviewing courts have recognized the necessity for determination of an applicant's moral fitness upon record evidence, where no set procedure had been prescribed for handling such matters. Petition of Board of Law Examiners Examination of 1926, 191 Wis. 359, 210 N.W. 710; In re Sullivan, 57 Mont. 592, 189 P. 770. In some of these cases the law required that evidence be received by the court after adverse ruling of a board or committee, Shotkin v. State, 73 Ga. App. 136, 35 S.E.2d 556; or specifically provided that the court should enter an order upon the record, after receiving such a committee's report. In re Eary, 134 W. Va. 204, 58 S.E.2d 647. Other cases indicate, where the controlling provision by which the examiners are to be guided is simply that proof of character must be made before a bar committee, that the entire record relied upon by such committee must be presented to the reviewing court, in case of a contest, and that the court will examine the evidence contained therein. In re Greenblatt, 253 App.Div. 391, 2 N.Y.S.2d 569; Carver v. Clephane, 78 U.S.App.D.C. 91, 137 F.2d 685. Where the prescribed procedure is for the filing of objections by individual citizens to the admission of attorney applicants, a judicial hearing and review of record evidence has been the practice. Rosencranz v. Tidrington, 193 Ind. 472, 141 N.E. 58, 28 A.L.R. 1136; In re Farmer, 191 N.C. 235, 131 S.E. 661. And after that procedure was instituted in Oregon, the court there noted that even though the board of bar examiners had authority to investigate an applicant's fitness and make a recommendation, "the conclusion reached by the board was based upon private and confidential investigation conducted by various of its members", and "the petitioner had no opportunity to meet his accusers face to face to refute any charges which might be made against him"; and that consequently upon an applicant's petition for relief "it is incumbent upon those making objections to offer evidence to support the same and to overcome the prima facie showing made by the applicant. It is not for the applicant to prove the falsity of the charges made against him. The burden of proof never shifts, but the burden of proceeding does." State ex rel. Board of Bar Examiners v. Poyntz, 152 Or. 592, 52 P.2d 1141, 1142, 54 P.2d 1212. See also "Bar Examinations and Requirements for Admission to the Bar, Shepard's Survey of the Legal Profession, 1952," p. 260, for a discussion of the outstanding attributes of the Pennsylvania system for examination and investigation of attorney applicants, wherein it is noted in respect to review of evidence on the issue of moral fitness that "whenever an oral hearing is granted by the State Board, the proceedings, insofar as possible, are transcribed so as to constitute a record which may be transmitted to the Supreme Court in the event the applicant desires to take a further appeal to that Court."
In re Frank, 293 Ill. 263, 127 N.E. 640, is relied on by the respondent Board to sustain its action in rejecting the application of the petitioner. That was a case wherein the reviewing court refused to overrule a decision of the committee on character and fitness rejecting an applicant on the ground that the evidence submitted by him had failed to establish his fitness. But it is clear, from a study of the opinion, that the conclusion of the reviewing court that the ruling of the committee should not be disturbed may well have been based upon the court's determination that the nature of the evidence adduced at the hearing before the *655 committee was such as to form a sufficient basis for the exercise of the committee's discretion, and that in such circumstances "the judgment of the committee [should] not be overruled for a mere difference of opinion as to the qualifications and general fitness of the applicant." (Emphasis supplied.) See also In re Bowers, 138 Tenn. 662, 200 S.W. 821.
It would seem, then, either by virtue of specific holdings, or by necessary implication, in the many cases dealing with the point, that where a court is asked to review the merits of a board's rejection of an application for admission to the bar, annotations 28 A.L.R. 1140, 72 A.L.R. 929, it is incumbent upon the board to sustain its ruling by record evidence and not by mere assertions that it is possessed of confidential information which shows the applicant to be unfit; and if the record consists only of evidence supplied by the applicant, then such evidence must demonstrate that the board's dissatisfaction with his application rests on valid grounds and not upon mere suspicion. Although the burden is always upon the applicant to "satisfy the Board of his or her moral standing," we have the view that when he has made the prima facie showing required by the statutes and rules governing admission to practice, "it is incumbent upon those making objections to offer evidence to support the same and to overcome the prima facie showing made by the applicant. It is not for the applicant to prove the falsity of the charges made against him." While the burden of proof never shifts, the burden of proceeding does. State ex rel. Board of Bar Examiners v. Poyntz, supra.
A study of the record in the instant case shows conclusively that the proceedings before the Board did not meet this test. While the transcript of the hearings at which the petitioner was interrogated is so incomplete as to serve little purpose other than to indicate that the proceedings were inquisitorial in nature, it does reveal that the petitioner apparently answered to the best of his ability all specific questions put to him by the members of the Board; that he supplied all documentary evidence, income tax returns and other papers that were specifically requested; that none of his answers were evasive or shown to be false; that no actual evidence of moral unfitness was adduced; and, consequently, that the Board must have relied entirely on undisclosed information to reach its conclusions that the application of the petitioner should be rejected. Under these circumstances we do not think that the petitioner was accorded due process in respect to his application. See Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494. See also annotation 18 A.L.R.2d 552.
Accordingly, the ruling brought here for review is quashed with directions that the applicant be given a hearing before the respondent Board in conformance with the principles herein stated.
It is so ordered.
DREW, C.J., and TERRELL and THOMAS, JJ., concur.